58   431
69   317
e69   318

LINTON J. USHER v. SIMPSON HOLLISTER.

No. 9995.

EJECTMENT BY VENDEE — *long in possession, maintainable where vendor, during vendee's non-occupancy, re-enters for non-payment of notes barred by Statute of Limitations ; contract not making non-payment ground of forfeiture.* Where a contract to sell and convey land is made, a large part of the purchase price paid in cash, and promissory notes executed for the remainder, but the non-payment of such notes at maturity or otherwise is not made a ground of forfeiture or rescission of the contract; and the purchaser takes possession and makes substantial improvements on the land, which meanwhile increases in value ; and such possession is retained for nearly twenty years, and never agreed to be surrendered, but the purchase-money notes are never paid, and their collection is barred by the Statute of Limitations ; *held,* that the vendor cannot, during the non-occupancy of such land by the vendee, lawfully re-enter possession and hold it, merely because of the non-payment of the notes ; and *further held* that, in the event he does so re-enter, ejectment by the vendee will lie to recover possession.

Error from Douglas District Court.    Hon. A. W. Benson, Judge.   Opinion filed July 10, 1897.   *Affirmed.*

*Bishop & Mitchell,* for plaintiff in error ; *N. H. Loomis,* of counsel.

*W. W. Nevison* and *D. S. Alford,* for defendant in error.

DOSTER, C. J.   This was an action of ejectment brought by defendant in error against plaintiff in error.   The land in dispute originally belonged to the Leavenworth, Pawnee & Western Railroad Company, subsequently changed in name to the Union Pacific Railway Company.   February 23, 1863, the railroad company executed a contract of sale of the land to E. H. Van Deusen and B. F. Hopper, for the consideration of $245 cash, and four promissory notes of $122 each, payable in one, two, three and four years,

respectively, with interest at six per cent. per annum.
The only clause of the contract necessary to be quoted
reads as follows :

"Now the consideration of this obligation is such,
that, if the said E. H. Van Deusen and B. F. Hopper
shall pay the said notes and the interest thereon as
herein specified and set forth, then the said railroad
company will, without delay, execute to them, the
said E. H. Van Deusen and B. F. Hopper, their heirs
and assigns, a general warranty deed for the above-
described, tract of land ; otherwise it shall be null and
void, and of no effect."

The vendees took immediate possession, and, in
August following, Van Deusen conveyed his interest
in the land to his co-owner, Hopper. Improvements
of considerable extent and value were made upon the
land, and Hopper continued in possession until 1870,
when he conveyed the land to one Samuel K. Huson.

The notes for the purchase money, then amounting,
with interest, to about seven hundred dollars, had not
been paid, and part of the consideration for the sale
of the land was the assumption of the notes by the
vendee. These notes are not yet paid, and it would
appear that their collection has long since been barred
by the Statute of Limitations. Huson died in 1875.
Neither he nor his heirs were ever personally in the
occupancy of the land, but they were in possession of
it through tenants from 1870 until 1881. About this
time Judge Devereux, trustee of the railroad com-
pany's lands, reminded the widow, Mrs. Huson, that
the purchase-money notes had not been paid, and that
he would have to take possession of the land. Mrs.
Huson told him they could not pay then, but might
do so some time. The Husons never surrendered pos-
session to Devereux nor agreed to his reassumption
of possession. It appears, however, that the tenant
of the Husons, a man named White, paid rent to

Devereux for the years 1880 and 1881; but the court below found that "the widow and heirs of Samuel K. Huson never surrendered possession of said lands, and said Devereux as trustee never took possession, except by receiving certain rents, as hereinbefore stated, from the tenant of said Huson estate."

In 1880, a portion of the land was sold for delinquent taxes, and, in 1881, the remainder was likewise sold. Tax deeds were issued on these sales in 1884 and 1885 to the late Judge John P. Usher, who took possession of the land through a tenant named Valentine Jones. In 1887, the Husons conveyed the land to Simpson Hollister, the defendant in error. Hollister thereupon commenced ejectment against Usher and his tenant. This action reached this court for final adjudication and was decided in favor of Hollister. *Jones et al. v. Hollister*, 51 Kan. 310. Judge Usher had died in the meantime, leaving a widow and three sons. The sons, pending the final determination of the suit, conveyed their interest in the land to their mother, who thus succeeded to all of Judge Usher's interest in it. About the time of the decision of the case in this court, one of the sons, S. C. Usher, went upon the land and demanded possession of it from Jones, the tenant. Mr. Jones, under the supposition that S. C. Usher represented his mother and that it was his duty to surrender possession to him, abandoned the premises. Thereupon S. C. Usher turned the possession of the land over to his brother, Linton J. Usher, the plaintiff in error. Linton J. Usher claims the land under a quitclaim deed executed to him July 29, 1890, by Judge T. A. Hurd, trustee of the railroad company's lands, and successor of Judge Devereux, now deceased. Whether he received this deed before or after he conveyed to his mother his interest in the land as an heir of his father,

Judge Usher, does not appear; nor do the covenants or conditions of the conveyance to his mother, or its character as a quitclaim or warranty deed, appear. If the conveyance from Judge Hurd preceded Linton J. Usher's conveyance to his mother, and if such conveyance to his mother was general in its terms, without exceptions or conditions, or was one of general warranty, his right of defense to this case might be materially affected. We will assume, however, that there is nothing in the conveyance to his mother to embarrass his right of defense to the ejectment suit brought against him. The foregoing synopsis of facts is all that is material to an understanding of the case. Judgment was given for the plaintiff Hollister, from which the defendant Usher prosecutes error to this court.

The basis of the plaintiff's contention is the equitable title acquired through the contract of sale by the railroad company to Van Deusen and Hopper, and the possession taken and held thereunder. The defense to the action is bottomed upon the theory of the forfeiture of such contract by reason of the non-payment of the purchase-money notes, and a consequent right in the railroad company, through its trustee, to re-enter upon and convey the land.

The plaintiff in error seeks to strengthen his position by a claim that Judge Devereux, as trustee of the land, regained its possession, or that the Husons, the intermediate vendees, surrendered such possession to him. This position, however, is untenable. There is nothing in the testimony which show such to be the case; while on the contrary the court finds, as before quoted, that the Husons never surrendered possession, and that Judge Devereux never took possession, except by procuring the tenant of the Husons to pay rent to him a couple of years.

It will be observed that the punctual payment of
the purchase-money notes was not made of the essence
of the contract to convey, nor of the right to continue
in possession. The vendees were put in possession by
the vendor, and they remained in possession for
nearly twenty years, without question by the railroad
company or its trustees. Valuable improvements ap-
pear to have been made upon the land, though at what
cost is not clearly disclosed. No specific demand of
possession was ever made upon any of the vendees, nor
was any specific declaration of forfeiture of the con-
tract of sale ever made. Judge Devereux only re-
minded the Husons of the unpaid purchase money,
and informed them that he would have to take the
land back if they did not pay. Linton J. Usher has
no greater rights than the railroad company or its
trustees had. Under such circumstances, can he,
standing in the place of the vendor, treat the contract
of sale as at an end, re-enter upon the land, and resist
an action for possession? We think not. The general
theory of the law in this State is, that, in the case of
agreements to convey land, where a substantial por-
tion of the purchase price has been paid, where time
of payment of the remainder is not made of the es-
sence of the contract, and where the purchaser has
been put into possession, the contract is to be regarded
as an equitable mortgage in the hands of the vendor.
In equity the land belongs to the vendee, with the le-
gal title remaining in the vendor as security for the
unpaid purchase money. In such case, two remedies
are open to the vendor : one, foreclosure of his con-
tract of sale as a mortgage ; the other, an action to
rescind the contract and recover possession ; in which
latter action the equities existing between the parties
may be ascertained and adjudged. The case is quite
similar in point of fact to that of *Courtney v. Wood-*

*worth* (9 Kan. 443), and falls fully within the principles upon which that case was determined. It was there held:

"Where a party sells land, executes to the purchaser a title bond therefor, receives a part of the purchase money, takes several promissory notes for the deferred installments of the purchase money, puts the purchaser in possession (time not being of the essence of the contract, by the terms of the bond itself), he cannot, nor can his grantee who purchases with knowledge of the facts, maintain ejectment for said land merely because the party claiming under the title bond, for want of funds fails to pay the balance of the purchase money."

Where a purchaser holding under a title bond fails or refuses to pay the purchase money when due, and fails to pay the same for a long time thereafter and after being frequently requested to pay the same, the vendor may, where the equities are sufficient, seek relief by an action to rescind the contract and recover possession, or he may treat the bond as an equitable mortgage, and bring his action to foreclose the equities of the purchaser and for the sale of the premises to satisfy the unpaid purchase money.

A person may not enter into an agreement to convey land, put his vendee in possession under such contract, receive a large portion of the purchase money and give time for the payment of the remainder, attach no conditions of punctuality of payment to the transaction nor otherwise reserve a right of forfeiture or rescission, tolerate the possession of such vendee for a score of years, the while the land is being improved and growing in value, and then, by taking the law into his own hands, re-enter possession, and resist ejectment by his vendee upon the sole ground of the non-payment of the balance of the purchase money, even though an action for the collection of such pur-

chase money has become barred by the Statute of Limitations.

What might be the rights of the defendant in error were he suing for specific performance — suing to compel the execution of a deed, for instance, or otherwise endeavoring to obtain something which his vendor, the railroad company, had not already given him — we need not inquire. We have no such case before us. The defendant in error, the plaintiff below, is suing for nothing but the possession of the land; suing to regain what his vendor before that time had conferred upon him. In our judgment, he may maintain the action; and the neglect of the railroad company to compel the payment of the purchase-money notes until they have become barred by the Statute of Limitations, will constitute no defense. Such seems to be determinable as a provision of statutory law. See Civil Code, § 25.

We do not understand that the court below adjudged title to the land to be in the defendant in error. We do not so adjudge it. We simply affirm his right to the possession of such land, and express no opinion as to the rights of the parties in respect to any other matters between them.

The judgment of the court below is affirmed.