No. 18,435.

W. R. HEWEY, *Appellee*, v. WILEY B. FOUTS et al.
(WILEY B. FOUTS, *Appellant*).

SYLLABUS BY THE COURT.

1. SALE — *False Representations — Inducement to Purchase — Damages.* In the negotiations leading up to the sale of goods which are bought for resale, a statement by the seller concerning the quantity he has already sold, and the profit he has thereby made, may be a material inducement to the purchase, and if falsely and fraudulently made by the seller, and relied upon by the buyer, may become the basis of an action for damages.

2. SAME—*Instructions—Preponderance of Evidence.* In an action for recovery on the ground of fraud, where the general instruction is given that the plaintiff must prove his case by a preponderance of the evidence, a new trial is not required because of a further instruction that a verdict should be returned for the defendant if the evidence was evenly balanced, or preponderated "to the slightest extent" in his favor.

3. CLAIM FOUNDED ON TORT—*Assignment—Amount of Recovery.* The assignment of a claim founded upon a tort vests in the assignee a right of action only for the amount by which the estate of the tort feasor was benefited.

Appeal from Sedgwick district court, division No. 1; THOMAS C. WILSON, judge. Opinion filed March 7, 1914. Modified.

*E. L. Foulke, C. A. Matson,* and *J. D. Wall,* all of Wichita, for the appellant.

*John W. Adams,* and *George W. Adams,* both of Wichita, for the appellee.

The opinion of the court was delivered by

MASON, J.: W. R. Hewey entered into a contract providing for the handling by him in the city of Wichita of an article known as the "White House Pantry," and including an agreement for the purchase of six hundred of them. He later brought an action against Wiley B. Fouts, alleging that he had been induced to make such contract by false representations of that defendant and others. Hewey recovered a judgment, and Fouts appeals.

The principal contention made is that the evidence did not justify the verdict, because the representations relied upon as constituting fraud were either shown to be true or were not actionable because they related to matters of opinion rather than of fact. There was evidence, however, that Fouts stated that he had sold over 900 pantries in Wichita, and had thereby made over $5500. The jury found that he had sold about 246, his net profits being about $452. The statement concerning the number of articles sold, and the profit made, was one of fact, having an important bearing upon the matter in hand. If falsely made, and relied upon, it afforded a sufficient basis for the recovery of damages. The amount of business done by Fouts would, of course, not be an infallible guide to the amount that Hewey could do in the same line, but what had actually been accomplished by Fouts was a material matter to be considered by Hewey in deciding whether he should engage in the same enterprise. Complaint is made of the admission of evidence regarding the construction of the pantry. It is perhaps true that if Hewey saw the article before making the contract, he could not found an action upon representations as to its character and qualities. But we think it was at least within the discretion of the court to admit evidence of the entire transaction. Upon this ground we think no material error was committed in allowing evidence to be given of

statements concerning plans that had been laid for making and marketing large quantities of the pantries, although such statements, being promissory in their nature, might not by themselves support an action.

Complaint is made of the admission of evidence regarding the weight of the pantries, on the ground that it was offered to show how many could be shipped in a car, whereas this would be affected by the size rather than by the weight. The matter was one for argument, and it does not appear that the jury could have been misled. Evidence was admitted, over the objection of Fouts, of misstatements to others similar to those made to Hewey. Within reasonable limits this was permissible (14 A. & E. Encycl. of L. 195), and we do not think the limit was exceeded. Errors are assigned in respect to the rejection of evidence, but the matters involved do not appear to be vital, and in any event no showing under oath was made, as required by section 307 of the code, of what could have been proved.

The charge included a statement that the plaintiff was required to establish his case by a preponderance of the evidence, to which was added: "and if the evidence is evenly balanced or preponderates to the slightest extent in favor of the defendant, then . . . you should find against the plaintiff." The defendant maintains that the words quoted were prejudicial, because, although nominally given for his benefit, they suggested that a preponderance of the evidence either way would be effective, however slight it might be. The rule is that fraud can only be shown by clear and convincing evidence. Even upon that issue, however, the giving of the ordinary instruction that the jury should be governed by the preponderance of the evidence is not regarded as error. (*Tanton v. Martin*, 80 Kan. 22, 101 Pac. 461.) A statement that the preponderance need not be great—that it was sufficient if it just barely preponderated—has been held to be erroneous. (*Bank v. Reid*, 86 Kan. 245, 120 Pac. 339.) We do not think the

sentence here complained of so far minimized the degree of proof required of the plaintiff as to justify a reversal of the judgment. Other assignments of error have been considered, but are not thought to require separate discussion.

In a second count of his petition the plaintiff declared upon a claim of the same character, alleged to have accrued in favor of one H. W. Davis, and to have been assigned to Hewey. There is a conflict of authority as to whether a cause of action is assignable which is founded upon a tort, where the estate of the tort feasor has not been benefited. (5 Enc. L. & P. 889.) In this state it has been held that only the original claimant can sue upon such a demand. (*K. M. Rly. Co. v. Brehm,* 54 Kan. 751, 39 Pac. 690.) That decision was based upon the language of the code to the effect that the provision that an action must be prosecuted in the name of the real party in interest shall not be deemed to authorize the assignment of a thing in action not arising out of contract. This language remains unchanged (Civ. Code, § 25), and the interpretation already placed upon it must be regarded as controlling. Davis could, however, make a valid assignment of his right to reclaim the money the defendants had wrongfully obtained from him, because he was privileged to regard them as having agreed to restore it to him. "Whenever one person commits a wrong or tort against the estate of another, with the intention of benefiting his own estate, the law will, at the election of the party injured, *imply* or presume a contract on the part of the wrongdoer to pay to the party injured the full value of all benefits resulting to such wrongdoer." (*Fanson v. Linsley,* 20 Kan. 235, syl. ¶ 2.) Therefore Hewey could maintain an action upon the claim that originally accrued in favor of Davis to the extent of recovering whatever Fouts profited by the transaction, but no further. The amount of recovery asked upon the first count was $2329.10, and upon the second $675.

The verdict was for $2527.10, in a lump sum, no apportionment between the two causes of action being indicated. Therefore something was allowed upon the second count, but it is impossible to say how much. It may have been the full sum asked, $675, or it may have been only $198. The record does not conclusively show that Fouts profited personally from the transaction with Davis, so it can not be said with certainty that the plaintiff was entitled to recover anything by virtue of the assignment. A new trial must therefore be granted upon the second cause of action, and as we can not know how much of the general verdict was based upon the assigned claim, a new trial must be allowed upon the first cause of action also, unless the plaintiff will consent to remit $675 from the verdict, the remainder to be regarded as the verdict upon the first count alone. If this remission is made, the judgment as modified accordingly is affirmed, as a final determination of the first cause of action. Upon the second, the motion for a new trial is sustained. No error being found that affects any part of the verdict excepting the amount of recovery, a new trial should be limited to that issue.