No. 22,727.

ALLEN H. BUSHEY, *Appellant*, V. GEORGE M. COFFMAN, *Appellee.*

### SYLLABUS BY THE COURT.

1. PLEADINGS—*Duty of Court to Interpret Pleadings and Define the Issues to the Jury.* It is the duty of a court to interpret the pleadings and instruct the jury as to the issues presented by them, and an instruction leaving to the jury the question of whether the action is one for the recovery of damages because of the fraud of the defendant in inducing the plaintiff to enter into a contract, or one for a rescission of the contract and restoration of property or its value, is erroneous.

2. SAME — *Contract — Fraud — Petition States Election by Plaintiff to Affirm Contract and Demand Damages for Fraud.* The petition examined, and it is held to state an election by the plaintiff to affirm the contract in question, retain what had been received under it, and to demand damages sustained by reason of the alleged fraud.

3. CONTRACT — *Fraudulent Representations — Fraud Discovered After Contract Partly Performed—Election to Complete Contract and Claim Damages for the Fraud.* A party induced by fraudulent representations to enter into a contract which has been partly performed before the discovery of the fraud, does not waive the fraud by an election to affirm the contract, complete its performance and retain what was received under it, and is not precluded from recovering damages sustained by reason of the fraud because of delay if his action is begun within the period fixed by the statute of limitations.

4. NOTES—*Financial Responsibility of Makers—Opinion Evidence Competent But Not Conclusive.* No error was committed in giving an instruction to the effect that the testimony of bankers and business men as to the financial responsibility of the signers of notes was not conclusive but was to be considered in connection with the other evidence in the case, direct and circumstantial, and given the weight and force to which it was justly entitled.

5. SAME — *Fraudulent Representations of Value of Bank Stock and Assets—Value Must Be Determined as of Date of Sale.* An instruction advising the jury that the value of the bank stock and assets was to be determined as of the date of the sale, and that evidence of its worth or worthlessness at any other time could only be considered so far as it threw light as to its value on the day the sale was made, is held to be without error.

6. SAME—*Notes Belonging to Bank—Opinion of Bank Commissioner as to Their Value Not Conclusive.* An instruction that evidence of the fact that the state bank commissioner required the charging off of certain notes as worthless would not be conclusive on the question of their

Bushey v. Coffman.

value if upon all the evidence the jury should find that the signers of the notes were solvent, and that the notes were good and collectible, was not incorrect.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed November 12, 1921. Reversed.

*John Madden, C. E. Cooper,* both of Wichita, *S. Harrison White,* of Denver, Colo., and *Fred A. Sabin,* of La Junta, Colo., for the appellant.

*W. D. Atkinson,* of Parsons, *W. R. Cline,* of Erie, *T. R. Evans,* and *H. P. Farrelly,* both of Chanute, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This case was here before upon an appeal from a ruling sustaining a demurrer to plaintiff's evidence. It was then determined that the uncontradicted evidence of the plaintiff was sufficient to overcome the demurrer and the judgment was therefore reversed. (*Bushey v. Coffman,* 103 Kan. 209, 173 Pac. 341.) Upon a remand of the case for another trial, the defendant with leave of the court filed an amended answer alleging that the plaintiff had waived any claim he may have had for damages by taking charge of the bank and operating it for many months without complaint, and by purchasing additional shares of stock long after the purchase of the controlling interest in the bank, and further that by failing to tender a return of the stock he was estopped to complain of the acts of the defendant. On the second trial a vast volume of conflicting evidence was received as to the representations made in the negotiations and as to the character and value of notes and other assets of the bank at the time of the transfer of the stock to the plaintiff. While evidence was offered tending to show misrepresentations as to the condition of the bank and the value of its assets, there was abundant evidence that the defendant acted fairly and honestly in the negotiation, and in the transfer of his stock in the bank. Because of the conflict in the evidence the instructions given by the court in the submission of the issues to the jury were of vital importance.

Complaint is made of several instructions and particularly of one relating to the remedies available to a defrauded party. It may be said that plaintiff's petition was in two counts, the

first of which charged that the sale of the bank stock was procured through the misrepresentation and fraud of the defendant, and for his loss and damage he asked judgment for $23,700. The second count was for a rescission of a contract for the purchase of certain real estate and water rights for $2,500, obtained under duress, and asking that a promissory note executed by plaintiff and delivered to defendant for $2,500, in payment of the property, be canceled. In this connection the plaintiff tendered a deed of the property acquired under the purchase. On the second count the verdict of the jury was in favor of the plaintiff and thereon judgment canceling the note was rendered. Of this part of the judgment there is no complaint. Upon the first count the verdict and judgment were in favor of the defendant and the present review is confined to the rulings and judgment upon that count.

The contention of the plaintiff is that the court erred in defining the issues and submitting the case to the jury. Instead of treating the count as an action for the recovery of damages sustained by reason of the fraud, it is claimed that the court confused the issues and misled the jury by submitting an instruction relating to the rescission of the contract. The first count was a charge of fraud and a demand for the recovery of the loss and damage sustained by reason of the fraud. There was no averment by plaintiff of a purpose to disaffirm or rescind the contract, no tender of that which had been received under it, nor of the taking of the steps essential to a rescission. The averments of the petition all tended to show that plaintiff had elected to retain what he had received under the contract which had been executed and to sue for the damages sustained by reason of the deceit and fraud of the defendant. On the former appeal the first count was regarded and treated as a cause of action for damages and not of rescission. (*Bushey v. Coffman*, supra.) When the pleader reached the second count he made it very plain that plaintiff was asking for a rescission and restoration. The instruction complained of did not interpret the pleading and define the issue submitted, but left the jury to determine what remedy had been chosen by plaintiff and presented in the petition.

In instruction 31 the trial court referred in general terms to the several courses open to one who has been induced to

enter into a contract through the fraud of another.    First, that he may elect to rescind and be restored to his former position; second, that he may affirm the contract, retain the property received under it, and recover his damages for any loss sustained because of the fraud; and third, he may waive the fraud and take such action as will estop him from asserting fraud and claiming a recovery on account of it.. The instruction proceeds—

"If plaintiff desired to rescind the contract between himself and the defendant, and recover the consideration paid by him for the bank stock then it was obligatory upon him, the plaintiff, to return or offer to return the bank stock to the defendant Coffman, before he instituted his action or he would not be entitled to recover herein, but if you shall find that he elected to retain the bank stock at its fair and reasonable value and recover the difference between such fair and reasonable value and the price paid therefor as his damages sustained, then and in that event, he of course, would not be required to tender a return of the bank stock before he would have a right of recovery against the defendant, but in either event he is required to act promptly after discovering that fraud has been practiced upon him by the defendant, or he cannot recover in this case.    The law does not permit a person who has been defrauded, and who has knowledge of the fact, to retain possession of the property without complaint, and hold it to suit his own convenience with the thought and expectation of gaining a profit thereon, before exercising his right of rescission or action for damages, and for the reason that this would give him an undue advantage of the other party, for after waiting, if the market should prove favorable he could sell and thus secure a profit, while on the other hand if the market should prove unfavorable, then he would escape all possibility of loss by looking to the party who had defrauded him for a return of all the consideration paid, or at least to the amount of damage sustained.    The law does not permit a person to play fast and loose in such a manner.    He must act promptly if he would look to the party who has defrauded him, or retain it beyond the period of prompt action and thus affirm the contract and be bound thereby as though no fraud had been committed.    By the term 'acting promptly' as used herein is meant that one must have taken action to protect his rights within such a period of time after discovering that he had been defrauded as a reasonably prudent person surrounded by the circumstances of this particular case would have done.    In this case if you shall find and believe from the fair weight or preponderance of the evidence that the defendant George M. Coffman made any false and fraudulent representations to plaintiff A. H. Bushey, that said Coffman at the time of making them knew that they were false and untrue, that Bushey actually relied upon them and believed them to be true, and was thus damaged, but you shall further find and believe from the evidence herein that after the discovery of the fraud thus practiced upon him, the plaintiff A. H. Bushey

paid the defendant for several shares of the bank stock theretofore purchased by him; that he made new loans for the bank on his own account as president of the bank; that he renewed and increased, on his own account, some of the old loans held by the bank at the date of the purchase of said bank stock; that he, on his own account, as president of the bank released from some of the banks paper sureties that were financially responsible in taking renewal of such paper; that he, after a lapse of more than one year, with the bank under his exclusive management and control, sold his stock therein at a considerable profit, and if you further find that he did not exercise his right under the law in instituting his action with that degree of promptness which an ordinary prudent person. situated as he was should have done, but instead, held and retained the bank stock and the management of the bank, without any complaint of the fraud thus known to him, and with the intention and for the purpose of gaining a profit out of the transaction, and after an unreasonable delay, lost on the transaction, instead of gaining a profit thereon, and then for the first time sought a recovery from the defendant of all the consideration paid by him, then and in these events, plaintiff would, by such acts on his part, have waived the fraud and affirmed the contract, notwithstand'ng the fraud, and he would be, thereby estopped from claiming a right of recovery herein and your verdict must be for the defendant."

It was the duty of the court to determine from the pleadings the relief that was sought by the plaintiff and to advise the jury as to the rules of law applicable to the enforcement of that remedy. The instruction covered the different remedies open to the plaintiff, but the jury could not go to the pleadings to ascertain the election that had been made by the plaintiff, nor could they look to the evidence to determine what the issues in the case were. The averments of the petition proceeded on the theory that the plaintiff was affirming the contract, retaining the property purchased and asking a recovery for the loss sustained because of the fraudulent representations of the defendant, and the jury should have been instructed that the plaintiff had elected this remedy and was required to produce evidence essential to recovery of damages. That portion of the instruction as to rescission and the restoration or tender of the stock sold was not within the issues and was confusing and misleading.

Another feature of the instruction is open to objection. It was laid down with considerable emphasis that plaintiff could not recover damages if he affirmed the contract by an act in performance of it; that is, if he retained the property purchased and did not promptly complain and ask for damages

upon learning of the fraud, no recovery could be had because
of the fraud. The court applied the same rule to a demand for
damages as to one for rescission. However pertinent the in-
struction might have been, if the plaintiff had elected to rescind
the contract it was not applicable to the remedy sought.
Plaintiff had paid full consideration for the stock first pur-
chased. It was a considerable sum, $23,700, and under the
purchase he had obtained and held the control of the bank some
time before the discovery of the alleged fraud. Perform-
ance of the contract was practically complete before that time.
The rules applicable to a contract imposed on a party by fraud
while it is purely executory, do not apply where the contract
is partly or completely performed before the discovery of the
fraud.

Some of the courts have held that if a defrauded party learns
of the fraud while the contract remains wholly executory, and
thereafter voluntarily does any acts in performance of the con-
tract, he will be deemed to have condoned the fraud and waived
his right to sue for the fraud. (20 Cyc. 92; 12 R. C. L. 413.)

In *Van Natta v. Snyder,* 98 Kan. 102, 157 Pac. 432, it was
held that a party who had been induced by fraudulent repre-
sentations to enter into a contract which had been partly per-
formed before the discovery of the fraud, was not precluded
from recovering damages for the fraud. The fact that she did
not repudiate the contract or promptly complain of the fraud,
it was held, did not bar her right of action. The contract be-
ing partly performed she was at liberty to affirm the contract,
retain what she had received under it, complete her part of the
performance, and then sue for the damages suffered from the
fraud, and her action therefor might be brought at any time
within the period fixed by the statute of limitations. In such a
situation an affirmance of the contract is not deemed to be a
waiver of the right to recover damages.

In the later case of *Geiger v. Cardwell,* 99 Kan. 559, 560, 163
Pac. 613, it was said that—

"This court has disavowed the rule that a discovery of the fraud in
an early stage of performance puts the injured party to an election be-
tween on the one hand stopping operations under the contract and seek-

42—109 Kan.

ing remedy for the fraud, and on the other going ahead under the agreement and condoning the wrong." (Citing the Van Natta case.)

It was decided that—

"Where one who has contracted to buy certain property for about $15,000, the transaction involving his assumption of an obligation which he discovers, after having paid $1,000 on the purchase price, to be about $500 larger than the seller had represented, he does not waive his right to recover damages on account of the fraud by accepting the property and completing the payment." (Syl. ¶ 1.)

The instruction questioned directly conflicts with the rules announced in these cases and must be regarded as material error.

Complaint is made of instruction 32 relating to the testimony of bankers and business men as to the responsibility of the makers of the notes which were alleged to have been represented to be good but were of little value. The jury were told that the opinions of the bankers and business men were admissible but their evidence was not conclusive on the jury. It was to be considered in connection with other evidence, direct and circumstantial, and given such weight as it was justly and fairly entitled to. Although the bankers and business men were sometimes erroneously referred to in the instruction as experts, the court was speaking of opinion evidence, and the instruction, only a summary of which has been given, gave the correct measure of opinion evidence.

Nor is there any reason to complain of instruction 33 which advised the jury that the value of the bank stock and assets of the bank alleged to have been misrepresented by the defendant was to be determined as of the date the sale was made. The court rightly instructed the jury that evidence of its value or worthlessness at any other time could only be considered as throwing some light on its value on the day the contract was made, and that if the assets and notes were good upon that date, it could make no difference that they may have depreciated in value or have become worthless at a later time. There was no error in the instruction.

It appears that the bank commissioner of Colorado visited the bank more than sixteen months after the plaintiff had purchased it, and some time after he had sold it to others for a price higher than he had paid the defendant for the stock, but

with a guarantee of the notes then in the bank. The bank commissioner required that quite a number of the notes which were in the bank when the defendant sold it should be charged off as worthless. In this connection the jury were instructed that if the makers and sureties of the notes held property not exempt from sale under execution and were in fact solvent, the notes were to be regarded as good, notwithstanding they had been charged off under the direction of the bank commissioner. Plaintiff contends that the commissioner is a sworn officer of the state, with authority to investigate the condition of banks and the values of the notes, securities and assets held by banks, and that the instruction of the court minimized the weight and force of the evidence of such an officer. There is nothing conclusive in the inferences or action of the commissioner as to the value of the paper in the bank, or of the solvency of those indebted to the bank. His opinion and order that the makers of notes were insolvent and the notes worthless, would not be entitled to credence if it were shown by other competent and convincing evidence that the makers were solvent and the notes were good. It appears that he called and held a midnight meeting of the directors and apparently with little inquiry directed the charging off of many of the notes in the bank. Whatever may have been the extent of his inquiry and information as to the value of the notes, his opinion and action did not foreclose inquiry by the court as to the financial responsibility of the makers and sureties of the notes when the sale was made by the defendant.

Other instructions are criticized by the plaintiff, but we find nothing erroneous in them nor anything requiring special comment.

For the error pointed out in the instructions, the judgment will be reversed and the cause remanded for a new trial.