No. 46,312

WALTER C. LETZIG, and LILLIAN I. LETZIG, husband and wife; FREDERICK K. CROSS, Administrator w. w. a. Estate of Lee Young, deceased, and JOSIE YOUNG; HOWARD P. O'HARO and MARY A. O'HARO, husband and wife, *Appellants,* v. RICHARD RUPERT, Executor Estate of Juanita R. Rupert, deceased; and LLOYD R. WALLACE, *Appellees.*

(495 P. 2d 955)

Opinion filed April 8, 1972.

*Marion C. Miller,* of Kansas City, argued the cause and was on the brief for the appellants.

*William E. Scott,* of Kansas City, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

OWSLEY, J.: This is an action for damages caused by the misrepresentation, fraud, and deceit of the defendant. The trial court sustained a motion for summary judgment in favor of the defendant

on the grounds that the plaintiffs' causes of action were premature.

The controversy centers around Form 319A "Option Agreement—Flat Payment," whereby each of the plaintiffs purchased property located in Wyandotte County, Kansas, from the defendant, Juanita R. Rupert, through her agent, Lloyd R. Wallace. It is conceded that each of the parties plaintiff signed the same agreement and each is in the same position. The appellant purchasers will be referred to as the plaintiffs herein and the appellee seller will be referred to as the defendant.

The parties present this appeal in accordance with Rule No. 6 (*o*). The agreed statement approved by the parties and approved by the court in accordance with this rule is set forth as follows:

"The defendant Juanita R. Rupert owned real estate in Blue Lane Addition. The defendant Wallace and she had an agreement whereby he would handle the sales in such addition for her and share in proceeds, so that for all intents and purposes, they may be considered owners and vendors.

"Plaintiffs Letzig and defendants executed an instrument, hereinafter set out in full, whereby such plaintiffs would pay an agreed down payment on the agreed price, and by making installments required, would be entitled to a conveyance of the property.

"Plaintiffs Young did likewise, as did plaintiffs O'Haro.

"After having made their respective down payments and installments, during which time they had possession, plaintiffs allegedly claim to have discovered that they had been induced to enter into such purchases by reliance upon misrepresentations of the defendants, to their damage, and thus this action the plaintiffs, by their respective counts of the petition, assert a cause for damages for misrepresentation.

"Defendants claim, and assert by their Motion for Summary Judgment, that suit is premature, and thereby contend that plaintiffs have no cause of action until they complete payment of the agreed price.

"The Honorable Court has adopted this view and so ruled, and dismissed the petition without prejudice, thus creating the real and primary issue: Do plaintiffs presently have a cause of action or must they either pay forthwith the balance due to avoid dismissal, or otherwise continue in due course to make and complete all the payments to discharge the price before being entitled to their recourse to, and relief by, the Courts for their causes of action as stated.

"For purposes hereof, no issue is raised but all that plaintiffs have been, and are, current in installments required.

"Plaintiff Lee Young, now deceased, has been succeeded as a party by Frederick Cross, administrator w. w. a; and defendant Rupert, since deceased, has been succeeded by Richard Rupert, executor.

"For the reason that same bear, and may be both essential and helpful, for your determination, the Record as follows is incorporated herein by reference."

By journal entry dated July 27, 1970, the trial court made the following finding:

"2. Defendants' motion for the dismissal of plaintiffs' actions, without prejudice, should be sustained as of September 14, 1970, unless plaintiffs or any one of them should elect, on or before September 14, 1970, to exercise his or their respective options by depositing the entire amount required to take up his option with the Clerk of this Court, in which event defendants' motion for dismissal should be overruled as to such plaintiff or plaintiffs who deposit said amount and who elects to take up said option and to purchase the real estate he has under option."

The sole and agreed question presented by the parties on appeal is whether or not the trial court erred in making this finding. It is apparent that Form 319A "Option Agreement—Flat Payment," which is the subject of this action, has been popular for many years and has been used extensively in Wyandotte County, Kansas. The agreement has been before this court for construction on many occasions. (*Dengel v. Lowder,* 144 Kan. 735, 62 P. 2d 866; *Rieke v. Smith,* 144 Kan. 643, 62 P. 2d 889; *Home Owners' Loan Corp. v. Torrey,* 146 Kan. 332, 69 P. 2d 1096; *Hively v. Graff,* 151 Kan. 594, 100 P. 2d 685; *Stevens v. McDowell,* 151 Kan. 316, 98 P. 2d 410.)

Briefly stated, in connection with plaintiff Letzig, the defendant for consideration of the sum of $100.00 gave an option until the first day of May, 1962, to Letzig, to purchase certain real estate in Wyandotte County. The option price was $4,502.37 and Letzig had the right to extend the option from month to month by paying the sum of $40.00 on the first day of each succeeding month. The agreement further provided that in the event of the exercise of the option, Letzig would be entitled to credit for the payments made to the defendant on the purchase price of the real estate. Other provisions of the contract are not necessary to decide the point on appeal.

In *Stevens* we properly construed this contract in the following language:

"The bench and bar of this state have long been familiar with a form of real-estate contract between two parties, whom for convenience we will name as the owner-vendor and the tenant-vendee, in which the former names a price at which he will sell the property and names a specified amount to be paid monthly, and in which he agrees to let the latter into possession upon condition that if the monthly payments are made until their aggregate sum amounts to the specified purchase price the property shall be conveyed to the latter; but if the tenant-vendee fails in his monthly payments then whatever amounts he shall have paid are to be considered merely as rent for the premises, and he shall have no interest in the property and may be removed therefrom as in forcible detainer. There are many clever, even devious, contracts to this effect, and the sum of judicial dealing with them in this and other courts

may be stated to this effect: If the down payment by the tenant-vendee has been negligible, and his monthly payments have been but few or have only been paid irregularly, to the manifest loss of the owner-vendor, the contract will ordinarily be enforced according to its terms. (*Roberts v. Yaw,* 62 Kan. 43, 49, 61 Pac. 409; *Drollinger v. Carson,* 97 Kan. 502, 155 Pac. 923; *Heard v. Gephart,* 118 Kan. 82, 233 Pac. 1044; *Rieke v. Smith,* 144 Kan. 643, 62 P. 2d 889.)

"But if the monthly payments have been made with reasonable promptness and have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment on the purchase price, or where substantial improvements have been made by the tenant-vendee, then equity may not permit the interest of the tenant-vendee to be summarily extinguished in forcible detainer, but will deal with the situation according to equitable principles, and may require proceedings as in equitable foreclosure before the interest of the latter can be extinguished. Cases illustrating various aspects of this doctrine run through all our reports. (*Courtney v. Woodworth,* 9 Kan. 443; *Holcomb v. Dowell,* 15 Kan. 378; *National Land Co. v. Perry,* 23 Kan. 140; *Usher v. Hollister,* 58 Kan. 431, 49 Pac. 525; *McCullough v. Finley,* 69 Kan. 705, 707, 77 Pac. 696; *Geffert v. Geffert,* 98 Kan. 57, 157 Pac. 348; *Yost v. Guinn,* 106 Kan. 465, 188 Pac. 427; *Holman v. Joslin,* 110 Kan. 674, 205 Pac. 629; *Marquez v. Cave,* 134 Kan. 374, 5 P. 2d 1081; *Ditzen v. Given,* 139 Kan. 506, 32 P. 2d 448; *Home Owners' Loan Corp. v. Jaremko,* 146 Kan. 328, 69 P. 2d 1096.)

"See, also, 6 Kan. Bar Journal, 328-330." (pp. 319, 320.)

In *McWilliams v. Barnes,* 172 Kan. 701, 242 P. 2d 1063, we considered the point raised in this appeal and said:

"A party defrauded in the making of a contract, who discovers the fraud after having partly performed, may continue with performance and also have his action for damages." (Syl. ¶ 1.)

The contract involved in *McWilliams,* according to the records in this court, is similar to the contracts involved here. In *Mc-Williams,* the purchaser paid $1,000 down and extended the option by paying $35.00 each month thereafter. The *McWilliams* case appears to have decided the issue now raised by this appeal.

The defendant questions the rule established in *McWilliams,* claiming that a thorough reading of this case does not disclose the defendant ever called the court's attention to the proposition that until plaintiff exercised his option he had no rights which could be, or were, damaged. We do not agree with the proposition that plaintiff cannot be damaged until he exercises his option. Also, we do not agree that the failure of the court in *McWilliams* to consider the proposition detracts from the establishment of the rule of law stated therein.

Defendant cites *Bushey v. Coffman,* 109 Kan. 652, 201 Pac. 1103,

as being contrary to *McWilliams*. We do not construe *Bushey* as stating a contrary rule of law. *Bushey* held that a party induced by fraud to enter into a contract which has been partly performed before discovery of the fraud does not waive his cause of action based on fraud by an election to affirm the contract, complete its performance, and retain what was received under it.

We agree that purchasers' continued compliance with the contract after discovery of the fraud does not constitute a waiver, but we do not construe *Bushey* as holding that the purchaser in a real estate contract must complete all installment payments before an action based on the fraud of the seller can be commenced.

The record discloses that as of February 5, 1970, plaintiff Letzig had paid $2,167.50 on the purchase price of $4,502.37. Young and O'Haro had paid like amounts on the same purchase price. In view of the record, we are justified in assuming the plaintiffs have each continued to make their monthly payments. If this is true each of the plaintiffs has paid on said purchase price the additional sum of $1,000 up to and including March 5, 1972. Since interest is deducted from payments by the terms of the agreement, plaintiffs would not be entitled to a reduction of the principal in the full amount paid.

We affirm the ruling in *Stevens* that when the purchaser has made payments for such a length of time that the aggregate amount of said payments constitutes the equivalent of a substantial payment of the purchase price the purchaser acquires an equitable interest in the property. We conclude that the payment of $2,167.50 on a purchase price of $4,502.37 constitutes a substantial payment justifying the claim of the purchasers that they hold an equitable interest in the property. We follow the rule in *McWilliams* that these plaintiffs may have their action for damages without fully performing the contract. We further hold that an action for damages cannot arise until the purchasers have acquired an equitable interest in the property in accord with the test expounded in *Stevens*.

This conclusion disposes of cases like *Caldwell v. Frazier*, 65 Kan. 24, 68 Pac. 1076, and *Fourth National Bank v. Hill*, 181 Kan. 683, 314 P. 2d 312. These were "pure option" contracts whereby for a stated sum a person is given the right to purchase property at a stated figure for a limited time. The option holder in this arrangement acquires no equitable interest in the property which will, prior to the exercise of the option, support an action for damages.

The trial court found that before plaintiffs have a cause of action for damages based on fraud they must exercise their respective options by paying the entire amount due on the contracts. In so doing, the trial court has rewritten the agreement between the parties. We feel that the trial court by its judgment herein has required the plaintiffs to complete their payments and exercise their options when in fact it may be impossible for them to do so. If impossible, the ruling of the trial court, in effect, defeats plaintiffs' causes of action. An action for fraud must be commenced within two years after discovery of the fraud. (K. S. A. 1971 Supp. 60-513 [3].) If plaintiffs do not have a cause of action until each of them has completed his payments, their action would be barred by limitations, since the completion of the payments may not occur under the facts in this case until more than two years after the discovery of the fraud. This exposes the unfairness of the trial court's ruling.

We conclude that the plaintiffs' causes of action are not premature.

The judgment is reversed.