No. 47,115

Hawthorn-Mellody, Inc., *Appellee*, v. William G. Driessen and
Marion V. Driessen, *Appellants*.

(518 P. 2d 446)

Opinion
filed January 26, 1974.

*John J. Alder*, of Alder and Rixner, of Shawnee Mission, argued the cause, and *Harlan L. Long*, of Shawnee Mission, was with him on the brief for the appellants.

*Winton A. Winter*, of Winter and Green, of Ottawa, argued the cause, and *Robert W. Green*, of Ottawa, was with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This case involves litigation over a dairy products distributorship contract. The plaintiff-appellee, Hawthorn-Mellody, Inc. is a producer of milk products. Hawthorn-Mellody is a successor corporation to the Meyer Sanitary Milk Company, having been assigned all of Meyer Sanitary's assets and having assumed all of its liabilities as of December 31, 1967. The appellants-defendants are William G. Driessen and his wife, Marion V. Driessen. William Driessen, a resident of Wisconsin, had been engaged in the retail dairy business since 1935. Meyer Sanitary Milk Company needed a distributor for its products in a territory covering portions of southeastern Kansas, western Missouri and northern Oklahoma.

In August of 1966 representatives of Meyer Sanitary Milk Company made contact with Mr. Driessen in Wisconsin where negotiations took place for the purchases of milk distributorship by Driessen covering the territory described above. Driessen also came to Kansas for discussions about the proposal. A written distributorship contract was entered into between Meyer Sanitary Milk Company and William Driessen dated September 1, 1966. In order to carry out the distributorship, Driessen purchased trucks and other personal property from Meyer Sanitary. In making this purchase Driessen paid a substantial sum of money to Meyer Sanitary and executed along with his wife a promissory note in the amount of approximately $48,000. This note was secured by a security agreement covering the trucks and other personal property. Driessen commenced operations under his milk distributorship and proceeded to purchase quantities of milk products for resale in his territory, originally from Meyer Sanitary and later from its successor, Hawthorn-Mellody. For reasons not clear from the record the milk distributorship was not a financial success. The Driessens were unable to meet their payments on the promissory note and also failed to pay for milk products purchased on the open account with Hawthorn-Mellody. Driessen operated the distributorship for a period of about 27 months after the contract was executed. In November of 1968 the defendant, Driessen, gave up the ghost and closed the business. By agreement of the parties the defendants returned the trucks and other personal property of the business to Hawthorn-Mellody and assigned the accounts receivable to Hawthorn-Mellody. After crediting these items on the Driessens' note and the open account there remained a substantial balance due and owing. At this point the litigation began.

By its amended petition Hawthorn-Mellody sought to recover from the Driessens the total sum of $64,887.10 representing the claimed balance owing on the open account for dairy products purchased plus the claimed balance due on the Driessens' promissory note. From the record it appears that a full accounting was made as to credits and offsets allowed to the Driessens. The trial court found that Hawthorn-Mellody was entitled to recover judgment against the defendants on the note in the amount of $3,322.23 with interest and further the sum of $51,511.60 on the open account. We are not concerned on this appeal with these financial calculations. The issues presented to us arise solely out of the defendants' counterclaim.

The counterclaim filed by the defendants against Hawthorn-Mellody alleged that Hawthorn-Mellody and its predecessor Meyer Sanitary Milk Company, acting through representatives, were guilty of fraud in the inducement of the contract and in the manner in which it carried out the contract with the defendants. A comprehensive pretrial order was prepared by the parties and signed by the court. It set forth the issues of fact to be determined under the defendants' counterclaim, including whether the plaintiff was guilty of fraudulent representations in the inducement and performance of the contract, the extent of any damages resulting therefrom and other allied issues. There is no question that under the pretrial order issues of both fact and law pertaining to fraudulent representations on the part of Hawthorn-Mellody were matters to be determined in the case. With the case in this posture it proceeded to trial to the court sitting without a jury. In the course of the trial the court excluded certain evidence offered by the defendants on the issue of plaintiff's alleged false representations. The trial court further held that the defendants' claim of fraud was barred as a matter of law. It is these rulings of the trial court excluding proffered evidence as to fraudulent representations and holding as a matter of law that the defendants' counterclaim had no validity which make up the points of claimed error to be determined by this court on this appeal.

We should examine more closely the allegations of defendants' counterclaim. It should be emphasized that we are not passing upon the merits of defendants' counterclaim. On this appeal we must determine whether or not the defendants, the Driessens, were denied a fair trial by being denied the opportunity to present their evidence on their counterclaim alleging false representations.

The Driessens claim that when Mr. Driessen was approached by a representative of the plaintiff in Wisconsin in August of 1966 he was shown a document entitled "Projected Gross Income and Expenses" along with a map of the territory which was to be covered by the milk distributorship. According to Driessen the representative, Harry Stuke, stated that the projected gross income and expense statement was based upon the actual income and expenses of the company in the territory for the month of June 1966. According to Driessen, Stuke said that Driessen could reasonably expect a net profit of $3,352 per month should he take over the distributorship in the territory. Stuke stated to Driessen that, "This is a gold mine." According to Driessen, Stuke further said that there would be a full-time representative of Meyer Sanitary in the territory to assist in the development of sales. According to Driessen, Stuke also stated that the territory included under the distributorship contract was to be Driessen's exclusive territory. At the trial Driessen testified that he believed the statements and promises made to him by Stuke and that he relied thereon and as a result entered into the milk distributorship contract with the plaintiff. As we analyze the record and briefs the defendants' claim of fraud is founded primarily upon the representation as to the expected profit of $3,352 per month to be made from the distributorship as established by the written statement of projected income and expenses coupled with the statement of Stuke that the projected figures were based upon the actual experience of the company in the territory during June of 1966.

As pointed out heretofore the trial court refused to permit the Driessens to introduce much of their evidence showing the circumstances involving the operation of their business and the difficulties caused by the alleged failure of plaintiff to live up to the representations of its agents. In their brief the defendants-appellants raise several points all of which arise from the fact that the trial court refused to recognize any validity to the defendants' counterclaim of fraud and as a result thereof refused to permit the Driessens to introduce evidence in support of their counterclaim. As its first point the defendants contend that the trial court erred in ruling as matter of law that the defendants were barred from asserting a defense and counterclaim based on allegations of fraud in the inducement and performance of the distributorship contract. The trial court in its Conclusion of Law No. 1 found that the written agreements entered into between the parties were not inconsistent or ambiguous

and therefore parol evidence was not admissible to explain the terms of the agreement between the parties. The trial court in Conclusion of Law No. 2 stated that oral negotiations in Wisconsin and Kansas had been conducted between the parties but held that all prior and contemporaneous negotiations were merged in the written agreement and the agreement between the parties must be determined from the writing itself since the agreement is complete and unambiguous. In reaching this conclusion we find that the court committed reversible error. The counterclaim of the defendants was based not upon contract but upon fraud as discussed above. A well-recognized exception to the parol evidence rule permits the use of evidence of fraudulent representations made during the course of negotiations where a contract is procured or induced by the fraudulent representations of one of the parties which were relied upon by the other. (*Culp v. Bloss,* 203 Kan. 714, 457 P. 2d 154.) The parol evidence rule simply has no application where the issue is fraud in the inducement to contract as is raised in this case. The court's ruling here constituted a categorical refusal of the court to even consider evidence of fraudulent representations offered by the defendants under their counterclaim and as a result thereof the defendants were denied a fair hearing.

In Conclusion of Law No. 7, the trial court found that a contract procured by fraud is not void, but is merely voidable and the defrauded party must elect to rescind it if he is to avoid the terms thereof. In Conclusion of Law No. 10, the trial court found as follows: "The right to elect to rescind a contract or transaction on the ground of fraud and to obtain equitable rescission thereof must be exercised promptly upon discovery of fraud. The defendants introduced evidence that they failed to make a profit the first months of operation. The delay of the defendants in alleging fraud is inconsistent with the degree of promptness required by the circumstances presented to the Court and such a delay is a bar to relief and constitutes a complete defense to the counter-claim of the defendants." The rule relied upon by the court is one that is applicable only where a party to a contract seeks to *rescind* the contract on the grounds of fraud. The rule has no application whatsoever where a party to a contract affirms the contract, continues in its performance and subsequently brings an action for damages on the theory of deceit or fraudulent representations. The rule is stated in *Bushey v. Coffman,* 109 Kan. 652, 201 Pac. 1103, as follows:

"A party induced by fraudulent representations to enter into a contract which has been partly performed before the discovery of the fraud, does not waive the fraud by an election to affirm the contract, complete its performance and retain what was received under it, and is not precluded from recovering damages sustained by reason of the fraud because of delay if his action is begun within the period fixed by the statute of limitations." (Syl. ¶ 3.)

In *Bushey* we emphasized that the rule applicable to rescission is not to be applied where the plaintiff later elects to stand upon the contract and sues to recover damages for the fraud. This rule is again followed in the recent case of *Letzig v. Rupert, Executor,* 209 Kan. 143, 495 P. 2d 955. In this case the court erred in refusing to consider the defendants' counterclaim seeking to recover damages for fraudulent representation, because defendants did not promptly rescind the contract after the fraud was discovered. Under the law they were not required to do so.

The defendants as their third point take the position that the trial court erred in adopting Conclusions of Law No. 3 and 4 which conclude as a matter of law that any false representations of the plaintiff in the "Projected Gross Income and Expenses" statement did not relate to a present or past state of facts and hence could not be the basis for a cause of action based upon fraudulent representation. Ordinarily fraudulent representations to constitute fraud must relate to some material past or existing fact. (*Federal Agency Investment Co. v. Holm,* 123 Kan. 82, 254 Pac. 391.) A false representation as to past or present profits or income has been held to constitute a sufficient basis for an action for damages on the ground of fraud. (*Hewey v. Fouts,* 91 Kan. 680, 139 Pac. 407.) Where the representation concerns future profits or income the question presented is much more difficult. There are many cases which hold that a statement made by a prospective seller to a prospective buyer as to the prospects of future income or profits is a mere prediction or opinion and not a statement of fact and that it cannot constitute actionable fraud. At times the form of the representation or opinion as to future profits or income is so vague that it is difficult to understand how anyone could have relied upon it or could have been misled by it. Nevertheless, where the party making the prediction concerning profits or income intends it, and it is accepted, as a statement of fact, the courts will ordinarily give it the legal effect of a statement of existing fact. There is an annotation on the subject in 27 A. L. R. 2d 14, where many of the cases are analyzed. The question whether fraud may be based on false statements as to

future profits and income may be influenced to a considerable extent by the present degree of certainty or uncertainty as to what the future will bring. Where the subject of the sale is a new business, so that there are few existing facts concerning its profits or prospects, the future is unusually speculative and it may well be held that representations concerning future profits involve too much guesswork to constitute actionable fraud. Where a business is well established and where the false statements concerning future profits are joined with statements as to past income or other facts which are apt to affect future income, the courts have held that the statements as to future profits or income constitute actionable fraud or that the combination of statements constitutes fraud. See for example *Culp v. Bloss,* supra, where the seller represented to the purchasers that he was grossing $400 per month from vending machines and that they could do likewise. Another factor which the courts have emphasized is that a representation as to future profits or income may be held actionable where one party to a contract has superior knowledge, or knowledge which is not within the fair and reasonable reach of the other party, and which he could not discover by the exercise of reasonable diligence. (*Jenkins v. McCormick,* 184 Kan. 842, 339 P. 2d 8.) The problem is of course to differentiate between a mere expression of opinion and a misrepresentation which is intended to be relied upon and to induce another party to enter into the transaction. In commenting upon this problem the Supreme Court of Washington in *Holcomb & Hoke Mfg. Co. v. Auto Inter. Co.,* 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39, stated as follows:

". . . It is, of course, sometimes difficult to determine whether a given statement is one of opinion or one of fact, as the subject matter, the form of the statement, the surrounding circumstances, and the respective knowledge of the parties each have a bearing upon the question; and there may be a want of one or more of the controlling circumstances. But there is a distinct line of demarcation between the rule for which the appellant contends and the one here applicable. If one merely states, that in his opinion, no matter what form the words may take, a given result will follow from a given act, no action will lie upon the expression, no matter how much another may have relied thereon to his injury. But if he states that he has, by reason of his observations and experience, particular knowledge of the subject, and knows because of his particular knowledge that a given result will follow from the given act, an action will lie thereon, if it is falsely made, by one who has acted thereon to his injury. The distinction is that in the one instance there is merely the expression of an opinion, while in the other there is a statement of fact blended with the expression of opinion; there is an implied assertion that he

knows facts which justify and make certain his opinion. The representations used in the instant case fall within the latter rule. There was a representation of knowledge of particular facts on which the expression of opinion was based, facts of which the agent had knowledge but which were unknown to the purchaser." (pp. 583, 584.)

In the present case it was the testimony of the defendants that the "Projected Gross Income and Expenses" statement prepared by plaintiff's representative and shown to defendant Driessen, projected a profit in excess of $3,000 per month under the milk distributorship contract. Driessen further testified that at the time it was exhibited to him he was advised by Stuke, plaintiff's representative, that the projected figures were based upon the actual expenses and income of company operations in the same territory during the month of June 1966. Hence the representations were based at least in part upon facts which purported to give authenticity to the projected figures. The projected statement of income and expenses was considered to be reliable by plaintiff's witness, Harley Mickelson, vice-president of Hawthorn-Mellody. He testified that he assumed the figures were true and that they were projected figures and were reliable and based upon the knowledge of the experienced people who prepared the figures. We also think it important here that the representatives of the plaintiff had superior knowledge of the milk distributorship in the territory. Any prior familiarity of Driessen with the milk business did not extend to the particular territory to be covered by the milk distributorship contract and he, of course, had to rely to some extent upon the superior knowledge of the plaintiff as to the past experience of their own distributors in the area.

The defendants' last point on this appeal is that the court erred in rejecting evidence offered in support of their counterclaim. The trial court, having held that the defendants' counterclaim for false representation was barred as a matter of law for the reasons discussed heretofore, was consistent in rejecting the evidence in support thereof offered by the defendants. We believe that under the circumstances of this case the defendants were entitled to introduce evidence on their counterclaim and that it was error for the court to refuse to permit them to do so. Much of the evidence offered was within the scope of the issues as set forth in the pretrial order and hence was improperly excluded.

In its brief the plaintiff Hawthorn-Mellody contends that the defense of fraud in the inducement cannot properly be raised in this

case because Hawthorn-Mellody was assigned the promissory note and open account by Meyer Sanitary Milk Company and therefore is a holder in due course. We believe this contention is without merit. It is clear from the record that Hawthorn-Mellody is the successor corporation to the Meyer Sanitary Milk Company and at the time Meyer's assets were assigned to Hawthorn-Mellody the latter also assumed all of Meyer's liabilities. Furthermore, Hawthorn-Mellody as the successor corporation has many of the same officers as did Meyer Sanitary Milk Company. It is difficult to see how Hawthorn-Mellody as the successor corporation could be a holder in due course and we hold that it does not have that status.

Finally the plaintiff asserts in its brief that the defendants have abandoned their appeal and that it should be dismissed. This contention was presented to the trial court who found that the appeal had not been abandoned. No appeal was taken from that ruling. Furthermore the record does not show an abandonment of the appeal by the defendants. We find this contention without merit.

For the reasons set forth above the judgment of the trial court is reversed and the case is remanded for a new trial on all issues of the case in accordance with the views set forth in this opinion.