KARAS, D.B.A. KARAS REALTY COMPANY, APPELLANT, *v.* FLOYD, APPELLEE.

*Messrs. Zarka, Karas & Allen, Mr. John S. Zarka, Messrs. Logan, Davis, Barney &' Leppla* and *Mr. Gary L. Leppla,* for appellant.

*Mr. J. Allen Wilmes,* for appellee.

BROGAN, J. In August of 1977, after residing in a sixth-floor apartment at 147 West Fifth Street, Dayton, Ohio, for approximately seven years, defendant-appellee, Mary Floyd, entered into an oral lease with her landlord, plaintiff-appellant, Nicoletta C. Karas, d.b.a. Karas Realty Company (appellant), becoming a month to month tenant in apartment 302 at the same location.

Subsequently, appellee complained of inadequate water pressure throughout her apartment. Appellant engaged the L.A. Hodson Plumbing Company to look into the problem. In a letter to appellee, dated August 30, 1979, appellant's attorney explained that a major overhaul would be necessary to correct the water pressure problem. The company requested that appellee move to apartment 402, which had recently been completely repaired, to allow the necessary repairs to be made.

Appellee declined to accept the offer to move, primarily because of the alleged defective condition of the elevator in the building.

As per appellee's request, by letter, to the Clerk of Courts for the Dayton Municipal Court, dated September 6, 1979, a hearing concerning the repairs necessary in the apartment was set for September 27, 1979. Thereafter, an escrow account was set up and appellee's rent, reduced from $110 per month to $60 per month, was to be deposited therein, beginning with the rent due for October 1979.

On October 5, 1979, appellant served appellee with a thirty-day notice of

termination.[1] Appellee was served, on November 6, 1979, with a three-day notice to leave the premises; but, she refused to vacate. On November 20, 1979, appellant filed a forcible entry and detainer action against appellee, asserting that the premises could not and would not continue to be operated as a rental unit due to unfeasible repairs.

Appellee admitted having received proper notice of the action but, pursuant to R.C. 5321.02, argued that the action constituted a retaliatory eviction.

The cause was heard in the Dayton Municipal Court on February 12, 1980. In a written decision filed April 7, 1980, the court determined that the action by appellant was in fact in retaliation for appellee's complaints about the condition of her apartment.

Appellant moved for a new trial, requesting an opportunity to present evidence showing that the repairs needed in appellee's apartment were economically unfeasible. This motion was denied by the court on May 21, 1980. Thereafter, appellant filed a timely notice of appeal.

Appellant sets forth two assignments of error, the first of which is as follows:

"The trial court erred as a matter of law in concluding that the forcible entry and detainer action filed below was retaliatory."

The trial court, appellant argues, misapplied the burden of proof requirements regarding claims of retaliatory eviction.

Upon reviewing R.C. 5321.02, the trial court decided to adopt the following view:

"* * * [I]f a tenant can show that the landlord raised the rent, decreased services or attempted to evict him soon after or commensurate with the exercise of his protected right — complaint to a govern-mental agency concerning defects in the premises that materially affect the tenant's health or safety * * * [, then] *the tenant has raised a presumption of improper motive* under R.C. * * * 5321.02; and unless the landlord introduces credible rebutable [*sic*] evidence by making a showing of justification under R.C. * * * 5321.03 relating to repairs that would effectively deprive the tenant of the use of the dwelling unit, or other cogent business or economic justifications, the tenant has sustained his burden of proof * * *." (Emphasis added.)

Appellant claims that a proper standard would place the burden of proof upon the tenant to show, by clear and convincing evidence, that the landlord acted for the sole purpose of retaliation. See *Dickhut* v. *Norton* (1970), 45 Wis. 2d 389, 173 N.W. 2d 297.

We have thoroughly examined the positions presented by appellant and the trial court and have determined both to be inappropriate under Ohio law.

Pursuant to R.C. 5321.04(A), a landlord has a duty to:

"(1) Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety;

"(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

"* * *

"(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him[.]"

In addition, R.C. 5321.02 provides, in pertinent part, that:

---

[1] On the same day appellant received a written statement of alleged housing code violations found by Housing Inspector Roger Baxter in his examination of the premises on August 27, 1979. These alleged violations included: peeling and flaking paint, damaged front door, improper cut-off valve for gas supply to the kitchen stove and insufficient water pressure throughout the unit.

"(A) Subject to section 5321.03 of the Revised Code, a landlord may not retaliate against a tenant by increasing the tenant's rent, decreasing services that are due to the tenant, or bringing or threatening to bring an action for possession of the tenant's premises because:

"(1) The tenant has complained to an appropriate governmental agency of a violation of a building, housing, health, or safety code that is applicable to the premises, and the violation materially affects health and safety;

"(2) The tenant has complained to the landlord of any violation of section 5321.04 of the Revised Code;

"* * *

"(B) If a landlord acts in violation of division (A) of this section the tenant may:

"(1) Use the retaliatory action of the landlord as a defense to an action by the landlord to recover possession of the premises[.]"

Thus, a landlord has a duty to make reasonable and necessary repairs to leased premises and cannot avoid such duty simply by eliminating the beneficiary thereof.

While the temporal proximity of the actions of the parties may be a substantial factor in a court's (or jury's) analysis of a landlord's motives in desiring to regain possession of a rental unit, such evidence does not create a presumption of retaliatory motive under Ohio law. However, R.C. Chapter 5321 also does not establish a clear and convincing standard for proving retaliatory motive.

There is no indication that the legislature of this state intended to implement, under R.C. 5321.02, anything other than the general standards of proof applicable to civil actions. Therefore, it appears that a tenant has met his burden of proof under R.C. 5321.02 when he has shown, by a preponderance of the evidence, that the landlord's decision to evict was in response to the tenant's complaints regarding housing code violations.

At that point it becomes the landlord's duty, pursuant to R.C. 5321.03(A), to prove that he brought the eviction action because:

"(1) The tenant is in default in the payment of rent;

"(2) The violation of the applicable building, housing, health, or safety code that the tenant complained of was primarily caused by any act or lack of reasonable care by the tenant, or by any other person in the tenant's household, or by anyone on the premises with the consent of the tenant;

"(3) Compliance with the applicable building, housing, health, or safety code would require alteration, remodeling, or demolition of the premises which would effectively deprive the tenant of the use of the dwelling unit;

"(4) A tenant is holding over his term."

While additional reasons may be established which would justify a landlord's action for possession, the burden of proving such reasons, by analogy to R.C. 5321.03, would be placed upon the landlord. In addition, in the case of unfeasibility of repairs, the facts relevant to such an assertion are peculiarly within the knowledge of the landlord and, as such, must be shown by him.

In the present case, it appears that the trial court was incorrect in stating that the short period of time between the tenant's complaints and the filing of the eviction action created a presumption of improper motive by the landlord.

However, appellee has established a causal link between her complaints and the action by the landlord, i.e., had it not been for appellee's legitimate complaints concerning problems in her apartment, the eviction action would probably not have been commenced. Therefore, the trial court's error in relying upon a presumption of retaliatory motive was harmless.

We must now consider whether appellant met the burden of proving she had

a valid justification for attempting to regain possession of the premises.

Had appellant desired to repair the problem regarding the water pressure in the rental unit, but was able to show that the repairs would have "effectively deprive[d] the tenant of the use of the dwelling unit" (R.C. 5321.03[A][3]), then a forcible entry and detainer action would have been permissible under R.C. 5321.03(A). However, appellant chose not to alter, remodel or demolish the premises and, consequently, cannot rely on that statute. Appellant chose, instead, to remove the unit from the market.

While demolition and a decision not to repair are not identical, they are analogous in that both result in the elimination of property as a rental unit. However, it is important to note that a decision to demolish a premises virtually guarantees removal of the unit from the market while choosing only to take a unit out of the market, premised upon asserted economic unfeasibility of repair, may be more susceptible to abuse and, thus, should be carefully scrutinized.

Herein, the trial court determined that there was insufficient evidence to establish that the necessary repairs in appellee's apartment were, in fact, economically unfeasible.

Upon investigating the situation, the plumber, Jack Brown, informed the manager of appellant's property that repairs could be extensive and possibly unsuccessful (due to the element of chance involved in choosing where to tap into existing water pipes to bypass the problem in the pipes in appellee's apartment). He testified that he did not furnish estimates and that his employer would probably have been reluctant to provide an exact estimate of the costs involved in making the repairs.

However, no evidence was presented which would place an approximate monetary value on the term "extensive." Appellant supplied no evidence as to the financial resources available to her to cover the costs of the repairs, noting only that other repairs, which would benefit all the tenants, necessitated her decision not to repair appellee's apartment. Thus, it appears that the evidence presented by appellant regarding economic unfeasibility of repair was vague and general in nature.

We are unwilling, therefore, to state that the trial court erred in finding that the evidence presented was insufficient to supply the quantum of proof necessary to justify appellant's actions in attempting to regain possession of the premises leased by appellee.

Appellant's first assignment of error is overruled.

As her second assignment of error, appellant claims that:

"The trial court erred in construing the Landlord-Tenant Act in an unconstitutional manner, i.e., by prohibiting the permanent closing of a rental unit."

The trial court did not construe the Landlords and Tenants Act to prohibit the permanent closing of a rental unit. The court simply found that the evidence presented did not sufficiently establish appellant's position regarding economic unfeasibility of repair. Had appellant presented sufficient factual evidence to substantiate the reasonableness of her position, it appears that the trial court would have properly granted appellant's request for possession of the premises.

Appellant's second assignment of error is overruled.

The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

PHILLIPS, P.J., and WILSON, J., concur.