CUYAHOGA METROPOLITAN HOUSING
AUTHORITY, APPELLANT, *v.* WATKINS,
APPELLEE.

(No. 47961—Decided
November 19, 1984.)

*Emanuella Groves,* for appellant.
*Steven L. Howland,* for appellee.

JACKSON, J. This is an appeal from an order of the Cleveland Municipal Court granting a directed verdict to defendant-appellee, Roselee Watkins, and against plaintiff-appellant Cuyahoga Metropolitan Housing Authority's (CMHA) action for forcible entry and detainer. The court found that the agreement between the parties was not a lease but rather a land installment contract. The vendor of a land installment contract may recover possession of his property only by use of a proceeding for foreclosure and judicial sale provided that the vendee has paid in accordance with the contract terms for five years or more or has paid a sum equal to or in excess of twenty percent of the purchase price.[1] The court made that determination and dismissed the action.

---

[1] R.C. 5313.07 provides in pertinent part:
"If the vendee of a land installment contract has paid in accordance with the terms of

Subsequent to the dismissal, the appellee filed an application for attorney fees. The court conducted a hearing on the application on December 9, 1983. At that time, the court held that the forcible entry and detainer action was "retaliatory" within the meaning of R.C. 5321.02[2] and awarded appellee attorney fees in the amount of $2,110. The judgment was journalized on December 21, 1983 and appellant CMHA timely assigns six errors for our review.

## I

Appellant's first three assignments of error[3] address the issue of whether the agreement was a lease or a land installment contract.

The appellant argues that the court lacked the authority to construe the agreement as a land installment contract. Pursuant to R.C. 5313.07[4] and under the conditions stated therein, however, a forcible entry and detainer action will not lie against a vendee of a land installment contract. The validity of the alleged "rental agreement" was immediately challenged by the appellee. Under these circumstances, the court had the authority to construe the agreement. The agreement is titled "Homebuyers Ownership Opportunity Agreement." As will become apparent, the provisions of this agreement establish rights in the appellee superior to that of a person merely using or occupying a residential premises.

The Homebuyers Ownership Opportunity Agreement program is implemented in accordance with procedural rules and regulations promulgated by the Department of Housing and Urban Development (HUD). The agreement is provided to CMHA from HUD and no modification may be made in format, context or text without HUD's approval. See Section 904.121, Title 24, C.F.R. Besides allowing an opportunity for "homebuyers" to become "homeowners," HUD[5] also provides for a training and counseling program, the purpose of which is to:

"* * * assure that the homebuyers, individually and collectively through their homebuyers association (HBA), will be more capable of dealing with situations with which they may be confronted, making decisions related to these situations, and understanding and accepting the responsibility and consequences that accompany those decisions." Section 904.201, Title 24, C.F.R.

The appellant CMHA argues that this agreement is merely a lease with an option to purchase. The Homebuyers Ownership Opportunity Agreement, taken as a whole, provides something quite different. Section 2 provides that:

"* * * *the Homebuyer may achieve ownership* of the home described in Part I by making the required monthly payments and providing maintenance and repairs to build up a credit [in his]

---

the contract for a period of five years or more from the date of the first payment or has paid toward the purchase price a total sum equal to or in excess of twenty per cent thereof, the vendor may recover possession of his property only by use of a proceeding for foreclosure and judicial sale of the foreclosed property as provided in section 2323.07 of the Revised Code. Such action may be commenced after expiration of the period of time prescribed by sections 5313.05 and 5313.06 of the Revised Code. In such an action, as between the vendor and vendee, the vendor shall be entitled

to proceeds of the sale up to and including the unpaid balance due on the land installment contract."

[2] See Appendix A at 25.

[3] See Appendix B at 26.

[4] See footnote 1 at 20.

[5] Section 4 of the Homebuyers Ownership Opportunity Agreement provides for counseling of homebuyers by CMHA as "required and approved by HUD."

* * * ('EHPA').[6] While the Homebuyer is performing his obligations, the purchase price will be reduced in accordance with the Purchase Price Schedule, so that, while this purchase price is being reduced, the Homebuyer is increasing the amount of his EHPA. *The Homebuyer may also make voluntary payments to his EHPA which will enable him to acquire ownership more quickly. The Homebuyer may take title to his Home when he is able to finance or pay in full the balance of the purchase price as shown on the Purchase Price Schedule plus the costs incidental to 'acquiring ownership, as provided in section 16 or 17, as applicable."* (Emphasis added.) Therefore, the homebuyer's purchase price is reduced in accordance with a schedule. Section 16c of the agreement provides that the homebuyer may achieve ownership when the amount in his EHPA, plus such portion of the "nonroutine maintenance reserve" (NRMR)[7] as he wishes to use for the purchase, is equal to the purchase price as shown at that time on his purchase price schedule. Section 10d controls the exercise of the "option." The homebuyer may exercise his "option" to buy the home by paying the applicable purchase price pursuant to Section 16 and by performing three conditions precedent: (1) the homebuyer must have achieved a certain balance in his EHPA within the first two years; (2) he or she must have met the requirements of the agreement; and (3) he or she must have rendered satisfactory performance of his responsibilities to the Homebuyers Association (HBA). The agreement provides that until the homebuyer satisfies the conditions precedent set forth in Section 10d governing the exercise of her option to purchase the home for the applicable price, the homebuyer shall have the status of *a lessee of CMHA.*

Under the provisions of this agreement a homebuyer is able to accumulate a substantial equity toward the purchase of a home. However, upon termination of the agreement, though the homebuyer may have her EHPA credits returned to her, the homebuyer still loses the right to purchase the home. Moreover, the agreement runs for thirty years. The evidence discloses that appellee has lived in the home since 1970, and that the purchase price has been reduced according to schedule.[8]

---

[6] The term EHPA means the "earned home payments account." This account is credited with a portion of the required monthly payment as well as any voluntary payments by the homebuyer and any additional equity earned through performing "other [nonroutine] maintenance" on the home.

[7] The purpose of the "nonroutine maintenance reserve" (NRMR) is to provide funds for the nonroutine maintenance of the home which consists of the infrequent and costly items of maintenance and replacement such as a range or refrigerator, replacement of a roof, exterior painting, etc.

[8] See *Letzig* v. *Rupert* (1972), 209 Kan. 143, 495 P. 2d 955, a Kansas Supreme Court opinion, which describes the "land contract" and contains relevant commentary regarding legal problems arising from its utilization in transferring title to real property. *Letzig* v. *Rupert, supra,* quoting *Stevens* v. *McDowell* (1940), 151 Kan. 316, 98 P. 2d 410, 413, states:

" 'The bench and bar of this state [Kansas] have long been familiar with a form of real-estate contract between two parties, whom for convenience we will name as the owner-vendor and the tenant-vendee, in which the former names a price at which he will sell the property and names a specified amount to be paid monthly, and in which he agrees to let the latter into possession upon condition that if the monthly payments are made until their aggregate sum amounts to the specified purchase price the property shall be conveyed to the latter; but if the tenant-vendee fails in his monthly payments then whatever amounts he shall have paid are to be considered merely as rent for the

Appellant relies upon the provision in the agreement which states that the homebuyer shall have the *status of a lessee of CMHA* until he or she satisfies the conditions of Section 10d, to support its contention that the agreement is a lease with an option to purchase.

Ohio courts have defined the terms "lease" and "option" contracts as follows:

"A lease is a conveyance of an estate in real property for a limited term, with conditions attached, in consideration of rent." *Jones* v. *Keck* (1946), 79 Ohio App. 549, 552 [35 O.O. 385].

"[Option contracts] are merely contracts by which one party in consideration of the payment of a certain sum to the other party, acquires the privilege of buying from or otherwise acquiring, or selling to such other party an interest in specified property, at a fixed price within a stated time." *George Wiedemann Brewing Co.* v. *Maxwell* (1908), 78 Ohio St. 54, 63.

The Ohio General Assembly has defined a land installment contract in R.C. 5313.01 as follows:

" 'Land installment contract' means an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation. *Option contracts for the purchase of real property are not land installment contracts."* (Emphasis added.)

Upon comparison of provisions of the Homebuyers Ownership Opportunity Agreement with a "lease" and an "option contract" as defined above, it becomes apparent that the appellee's interest is greater than the mere use of a residential premises with the privilege of purchasing it. Furthermore, the statutory definition of land installment contract expressly excludes option contracts for the purchase of real property. On the other hand, however, such comparison of the provisions of the homebuyers agreement with the definition of a land installment contract discloses that it includes substantially the essential elements required for such

premises, and he shall have no interest in the property and may be removed therefrom as in forcible detainer. There are many clever, even devious, contracts to this effect, and the sum of judicial dealing with them in this and other courts may be stated to this effect: If the down payment by the tenant-vendee has been negligible, and his monthly payments have been but few or have only been paid irregularly, to the manifest loss of the owner-vendor, the contract will ordinarily be enforced according to its terms. * * * [Citations omitted.]

" 'But if the monthly payments have been made with reasonable promptness and have been made for such a length of time that their aggregate amount constitutes the equivalent of a substantial payment on the purchase price, or where substantial improvements have been made by the tenant-vendee, then equity may not permit the in-terest of the tenant-vendee to be summarily extinguished in forcible detainer, but will deal with the situation according to equitable principles, and may require proceedings as in equitable foreclosure before the interest of the latter can be extinguished. Cases illustrating various aspects of this doctrine run through all our reports. (*Courtney* v. *Woodworth,* 9 Kan. 443; *Holcomb* v. *Dowell,* 15 Kan. 378; *National Land Co.* v. *Perry,* 23 Kan. 140; *Usher* v. *Hollister,* 58 Kan. 431, 49 P. 525; *McCullough* v. *Finley,* 69 Kan. 705, 707, 77 P. 696; *Geffert* v. *Geffert,* 98 Kan. 57, 157 P. 348; *Yost* v. *Guinn,* 106 Kan. 465, 188 P. 427; *Holman* v. *Joslin,* 110 Kan. 674, 204 P. 697, 205 P. 629; *Marquez* v. *Cave,* 134 Kan. 374, 5 P. 2d 1081; *Ditzen* v. *Given,* 139 Kan. 506, 32 P. 2d 448; *Home Owners' Loan Corp.* v. *Jaremko,* 146 Kan. 328, 69 P. 2d 1099.)' " *Id.* at 958.

a contract. Moreover, the title of the agreement, "Homebuyers Ownership Opportunity Agreement," is ambiguous on its face. In view of the fact that the lease was prepared by appellant, the maxim *"ambiguitas contra stipulatorem est"* applies, and the ambiguity or doubt in meaning or intent must be resolved against the appellant. *Central Realty Co.* v. *Clutter* (1980), 62 Ohio St. 2d 411, 413 [16 O.O.3d 441].

The trial court found that the agreement was a land installment contract and that the contractual relationship between the parties had existed for more than five years, and that appellee had paid more than twenty percent of the original agreed purchase price, pursuant to requirements of R.C. 5313.07. A review of the record discloses no reason to disturb the findings of the trial court. Accordingly, the posture of the evidence compels a conclusion that the agreement constitutes a land installment contract, and appellant's remedy is in a foreclosure proceeding, rather than in forcible entry and detainer. Appellant's first, second and third assigned errors are overruled.

## II

In the fourth assignment of error[9] appellant contends that the court erred in applying R.C. 5321.02(B)(3)[10] by authorizing an award of attorney fees when the agreement was found to be a land contract. This argument is erroneous. R.C. 5321.02 provides that reasonable attorney fees may be awarded if a landlord retaliates against a tenant by "bringing or threatening to bring an action for possession of the tenant's premises." A forcible entry and detainer action is an action for possession. *Kuhn* v. *Griffin* (1964), 3 Ohio App. 2d 195 [32 O.O.2d 278], paragraph one of the syllabus. Even though a forcible entry and detainer action was found not to be the proper remedy here, the action for possession, nevertheless, was brought within the meaning of R.C. 5321.02. The appellee was still required to defend against the action. The fourth assignment of error is overruled.

## III

In the fifth assignment of error appellant[11] argues that in view of the evidence presented, the court erred in holding that the forcible entry and detainer action was retaliatory. Additionally, appellant argues that notwithstanding a finding of retaliation, a landlord may still bring a forcible entry and detainer action if the tenant is in default in the payment of rent pursuant to R.C. 5321.03.[12]

The appellee alleged in her "brief in

---

[9] See Appendix B at 26.

[10] See footnote 2 at 21.

[11] See Appendix B at 26.

[12] R.C. 5321.03 provides:

"(A) Notwithstanding section 5321.02 of the Revised Code, a landlord may bring an action under Chapter 1923. of the Revised Code for possession of the premises if:

"(1) The tenant is in default in the payment of rent;

"(2) The violation of the applicable building, housing, health, or safety code that the tenant complained of was primarily caused by any act or lack of reasonable care by the tenant, or by any other person in the tenant's household, or by anyone on the premises with the consent of the tenant;

"(3) Compliance with the applicable building, housing, health, or safety code would require alteration, remodeling, or demolition of the premises which would effectively deprive the tenant of the use of the dwelling unit;

"(4) A tenant is holding over his term.

"(B) The maintenance of an action by the landlord under this section does not prevent the tenant from recovering damages for any violation by the landlord of the rental agreement or of section 5321.04 of the Revised Code."

support of her motion to compel answers to interrogatories" that she cooperated with the United States Justice Department and the FBI in an investigation of CMHA and some of its employees. Appellee was employed for a period of time by CMHA as the manager of the Homeownership Opportunity Program. She was terminated as a CMHA employee sometime in the spring of 1982. Appellee alleges that CMHA wanted her evicted because of her cooperation with the Justice Department and the FBI.

There is nothing in the record, however, to support these allegations. At the hearing held for the determination of fees, no testimony was heard. Appellee cannot demonstrate retaliation by merely referring to allegations contained in her briefs.

Moreover, appellant properly asserts that it had the right to bring an action in forcible entry and detainer because appellee was three months in default of rent payments. This right applies, however, only under certain circumstances. Where, as in the case at bar, the trial court found the agreement to be a land contract, a forcible entry and detainer action is appropriate *only* if the tenant or vendee has paid *less* than twenty percent of the purchase price or paid in accordance with the terms of the contract for *less* than five years. R.C. 5313.07. Otherwise, the vendor may recover possession of his property only by use of proceedings for foreclosure and judicial sale pursuant to R.C. 2323.07. Thus, notwithstanding a finding of retaliation a landlord may, under the proper circumstances, bring an action for forcible entry and detainer where the tenant or vendee is in default of rent. See *Karas* v. *Floyd* (1981), 2 Ohio App. 3d 4. Appellee contends that she was never in default of rent because her equity in the EHPA may be used "under exceptional circumstances" to meet delinquent monthly payments. Ap-

pellee, however, never requested that her EHPA credits be used for this purpose. Assignment of error five is well-taken.

### IV

In the sixth assignment of error[13] appellant argues that the trial court erred in awarding attorney fees because there was no request or finding of actual damages. We agree. In *Jemo Associates* v. *Garman* (1982), 70 Ohio St. 2d 267, 272 [24 O.O.3d 358], the Ohio Supreme Court has stated: "The language of R.C. 5321.02(B) expressly conditions the award of attorney's fees on a finding that the tenant suffered actual damages."

Furthermore, "[b]efore an appellate court can affirm the award of reasonable attorneys' fees by a trial court, the record, whether in the form of affidavits and/or other documentary material submitted to the trial court, or in the form of a transcript of an oral hearing, must support the court's determination." *Drake* v. *Menczer* (1980), 67 Ohio App. 2d 122, 126 [21 O.O.3d 429] (Krenzler, P.J., concurring). See *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85 [2 O.O.3d 65]. Assignment of error six is well-taken.

Accordingly, the award of attorney fees is reversed and the judgment of the trial court is modified, and is affirmed.

*Judgment affirmed in part and reversed in part.*

### Appendix A

R.C. 5321.02 provides:

"(A) Subject to section 5321.03 of the Revised Code, a landlord may not retaliate against a tenant by increasing the tenant's rent, decreasing services that are due to the tenant, or bringing or threatening to bring an action for possession of the tenant's premises because:

_____

[13] See Appendix B at 26.

"(1) The tenant has complained to an appropriate governmental agency of a violation of a building, housing, health, or safety code that is applicable to the premises, and the violation materially affects health and safety;

"(2) The tenant has complained to the landlord of any violation of section 5321.04 of the Revised Code;

"(3) The tenant joined with other tenants for the purpose of negotiating or dealing collectively with the landlord on any of the terms and conditions of a rental agreement.

"(B) If a landlord acts in violation of division (A) of this section the tenant may:

"(1) Use the retaliatory action of the landlord as a defense to an action by the landlord to recover possession of the premises;

"(2) Recover possession of the premises; or

"(3) Terminate the rental agreement.

"In addition, the tenant may recover from the landlord *any actual damages* together with reasonable attorneys' fees.

"(C) Nothing in division (A) of this section shall prohibit a landlord from increasing the rent to reflect the cost of improvements installed by the landlord in or about the premises or to reflect an increase in other costs of operation of the premises." (Emphasis added.)

### Appendix B

Appellant's assignments of error are as follows:

"*Assignment of Error No. I:*

"Absent a finding of ambiguity within the present agreement, the trial court had no authority to exercise its right of judicial construction.

"*Assignment of Error No. II:*

"The trial court erred in holding that the present lease with an option to purchase agreement is a land contract.

"*Assignment of Error No. III:*

"The trial court erred in dismissing the present action in forcible entry and detainer.

"A. An action in forcible entry and detainer is the appropriate action in the present default of a lease with an option to purchase.

"B. An action in forcible entry and detainer is appropriate where a lease with an option to purchase provides for termination of the agreement due to nonpayment.

"*Assignment of Error No. IV:*

"In light of the trial court's holding, the present agreement is a land contract, the trial court erred in applying the landlords and tenants act.

"*Assignment of Error No. V:*

"In light of the evidence and trial court's holding, the trial court erred in holding the present action in [*sic*] retaliatory.

"A. Absent any evidence of retaliation, the trial court erred in holding the present action in forcible entry and detainer was retaliatory.

"B. Pursuant to Ohio Revised Code Section 5321.03, an action in forcible entry and detainer for nonpayment shall negate a defense of retaliation.

"*Assignment of Error No. VI:*

"The trial court erred in awarding attorney fees in the present case.

"A. The defendant's failure to request attorney fees in her pleadings, precludes the trial court in awarding said fees.

"B. Pursuant to Ohio Revised Code Chapter 5321, a tenant may only be awarded attorney fees upon a request and subsequent finding of actual damages.

"C. Reasonable attorney fees must not be determined arbitrarily or capriciously."

ANN MCMANAMON, J., concurs.

MARKUS, P.J., dissents in part.

MARKUS, J., dissenting in part. In my view, the agreement between the

parties was a lease with an option to purchase rather than a land installment contract. The occupant-defendant made no agreement to purchase the property in installment payments or otherwise. See R.C. 5313.01. Instead, the occupant-defendant acquired a right to buy the property under stated terms and conditions, if she later chose to do so.

If this were a land installment contract, CMHA could elect not to foreclose and recover a judgment for the total unpaid contract price. See *Dalton* v. *Acker* (1981), 5 Ohio App. 3d 150, 151. Alternatively, CMHA could foreclose and then "recover the difference between the amount paid by the vendee [defendant] on the contract and the fair rental value of the property plus an amount for the deterioration or destruction of the property occasioned by the vendee's use." R.C. 5313.10.

Since the occupant's payments were set below the fair rental value to accommodate her modest income, that recovery could be very substantial. It would likely far exceed the occupant's accumulated EHPA account credits. By foreclosure, the occupant would lose her home, her accumulated EHPA account, and a substantial additional judgment.

Thus, the majority's decision will impose a very real hardship on CMHA occupants rather than benefiting them. I would reverse and remand for the completion of the forcible entry action.