OPINION
The Dayton Municipal Court entered a judgment in favor of Timbercreek Village Apartments ("Timbercreek") on its eviction action against Albert Myles and on Myles's escrow action, releasing all escrowed funds to Timbercreek. Myles now appeals.
In 1982, Myles became a resident at 3916 West Cornell Woods Drive, Apartment F, which is located in Timbercreek. On January 14, 1997, Myles signed his most recent lease agreement, which renewed his lease for the period February 1, 1997 through the end of April, 1997 and provided for monthly rent of $350 to be paid on the first day of the month and for late charges of "$15.00 on the 3rd of the month, plus a late charge of $5.00 per day thereafter until paid in full." Since the end of April, 1997, Myles had been residing at Timbercreek as a month-to-month tenant. Epoch Management became the property manager of Timbercreek on August 1, 1997, before which time it had been managed by Village Green Apartments.
In a letter dated June 1, 1998, Timbercreek informed tenants that renovations had begun at Timbercreek, notified them that they had thirty days to relocate to a new apartment within the complex, and directed them to "stop by the office at your earliest convenience and choose the location of your new apartment, and allow us to update your current paperwork." On June 16, 1998, Myles sent Timbercreek manager Traci Gouin a memo expressing his concerns about Timbercreek's "policy which appears to require all existing tenants to fill out a new application with reference to `Compliance Under Section 42,'" requesting "a copy of `Section 42' for my review" and the "statutory authority to require existing tenants to fill out a new application," and demanding the completion of all work orders for repairs to his apartment despite Gouin's previous indication to him that "the new owners did not have to do (repair) anything." Myles did not complete the requested paperwork, which included a new lease application. According to Timbercreek, it sent Myles a letter dated June 25, 1998, advising him to "consider this your notice to vacate the apartment by July 30, 1998." On June 29, 1998, Myles sent Gouin another memo requesting information on government housing programs as well as the name, address, and telephone number of Epoch Management. On June 30, 1998, Myles hand-delivered a "Notice of Landlord's Breach of Obligation," informing Timbercreek that he would deposit his July rent check into escrow with the clerk of the Dayton Municipal Court if several conditions were not remedied by July 1, 1998.
On July 6, 1998, Myles deposited $350 with the municipal court clerk. That same day, Timbercreek served Myles with a three-day "Notice to Vacate the Premises" for non-payment of rent for the month of July. The three-day notice informed Myles that he "may pay [his] rent and avoid eviction proceedings." On July 15, 1998, Timbercreek filed a complaint in forcible entry and detainer, alleging that Myles had failed to pay rent for the month of July 1998 and was in arrears in the amount of $384, representing $350 in rent plus a $34 late fee. Myles filed an answer on July 31, 1998, asserting that Timbercreek had filed the complaint to "retaliate against [him] for lawfully speaking out, asking questions, and representing Tenants' Rights as a duly elected Officer" of the Timbercreek Village Tenants' Association ("the TCVTA") and that the nonpayment of rent issue was moot because he had escrowed the July rent check.
Timbercreek filed a response to Myles's rent escrow application, seeking to dismiss the case for lack of jurisdiction because Myles had not been current in his rent obligation when he escrowed his July rent and asserting that Myles's rent escrow application was inappropriate. In Myles's "Answer to Landlord's Request [for an immediate trial]," Myles stated that he had attempted to escrow his July rent on July 3, but could not do so because the municipal court had been closed that day.
On August 3, 1998, Myles deposited his August rent with the clerk and issued a subpoena to Gouin to bring to trial documents related to his tenancy and to other Timbercreek tenants. The next day, Timbercreek filed a motion to consolidate the eviction case and the rent escrow case, which the magistrate granted. On August 11, 1998, Myles filed a memorandum objecting to the consolidation order and a motion to remove Timbercreek's counsel. That same day, Timbercreek filed objections to the subpoena. On August 12, 1998, Myles filed a motion to compel the production of the documents that he had requested in the subpoena and a motion to dismiss the eviction action.
On August 17, 1998, the eviction and rent escrow cases proceeded to trial before a magistrate, who overruled Myles's motion to remove Timbercreek's counsel and his motion to compel the production of documents related to other tenants. The evidence presented at trial established the following.
Timbercreek called Myles as a witness as if on cross examination. Although Myles denied having received the June 25, 1998 letter from Timbercreek, Timbercreek attempted to show that Myles's June 30, 1998 letter was proof that he had received the letter ordering him to vacate the apartment by July 30, 1998. Myles stated that he had refused to complete a new lease application because Timbercreek had not provided him with information on "Section 42" housing. Myles testified that he had deposited his July rent check into escrow on July 6, 1998 and had received the three-day notice to vacate the premises for "non -payment" that same afternoon. Timbercreek questioned Myles on the maintenance work that had been done to his apartment throughout the course of his tenancy to show that it had been responsive to his complaints.
Gouin testified that, when Epoch Management took over at Timbercreek, some of the units were in an "extremely horrible" condition, that they were in the process of being completely renovated, and that they were being converted into federally subsidized housing "under Section 42 of the Internal Revenue Service Code in terms of the mortgage." Gouin testified that, prior to moving into the new units, tenants were required to complete paperwork to determine their eligibility to live in subsidized housing and that five tenants had already done so and had been moved into their new units in June 1998. Gouin stated that, although she had contacted Myles that month to inform him that he could move into a new unit, Myles had refused to complete the required paperwork, instead demanding proof of the conversion into "Section 42" housing and asking to inspect bids submitted by contractors. Gouin further testified that the June 25, 1998 letter had been sent to Myles due to his refusal to complete the paperwork. Gouin stated that she had given Myles the July 6 three-day notice to leave the premises because he had not yet paid rent, which was due on the first of the month and considered late after the fifth, and that she had received notice of Myles's escrow application on the tenth or eleventh of July. She further stated that she had first learned of the existence of a tenants' association from Myles's June 29, 1998 notice asking to meet with her as soon as possible to discuss the TCVTA's concerns about "Section 42" housing.
On cross-examination, Gouin testified that the property had become "Section 42" housing on June 1, 1998 when she "had people start coming in and start getting their paperwork." Gouin testified that she had contacted Timbercreek's attorney upon receiving Myles's requests for information and had not otherwise responded thereto. Myles introduced Gouin's July 28, 1998 letter informing the tenants of Timbercreek's need to inquire into their household incomes to determine if they met the guidelines for "Section 42" housing. Myles's theory was that this letter revealed Timbercreek's retaliation against the tenants for forming the TCVTA and for contacting a city housing inspector, who conducted an inspection at Timbercreek on July 16, 1998.
Myles presented the testimony of Durrell A. Craft, the TCVTA's vice president, to show that Timbercreek had instituted the eviction action against Myles in retaliation for his efforts to organize the tenants. Craft testified that the TCVTA had come into existence in June 1998 and had held its first meeting in the parking lot outside the clubhouse on July 8, 1998 and that Gouin had not responded to the TCVTA's request to meet with her. Craft stated that, although he had received a three-day notice for late rent within the past six months, Timbercreek had not brought an eviction action against him. Craft explained that he had paid his rent upon receiving the three-day notice. Craft stated that, to his knowledge, Timbercreek had not pursued eviction proceedings against any tenants other than Myles. He also testified that he had never seen the June 25, 1998 letter in the "chronology" of documents kept by the TCVTA.
Patricia Turner, the TCVTA secretary, testified that the association had been formed because "the property is going down hill" and "it started to look like a ghetto area" during the past year. She stated that she had not seen the June 25, 1998 letter in the chronology. Turner further testified that a Timbercreek security guard had attempted to stop the July 16 housing inspection, that Timbercreek had not responded to the TCVTA's request to use the clubhouse for its July 8 meeting, and that Timbercreek had posted a sign on the clubhouse door that day misrepresenting that the scheduled meeting had been canceled. Turner stated that she had not understood the meaning or implications of the conversion to "Section 42" housing.
Timbercreek tenant Ken Jones testified that he had received a three-day notice to vacate due to late rent but had not been the subject of a forcible entry and detainer action. Jones stated that he had helped publish fliers for the TCVTA. Jones also testified that he had not completed the paperwork as requested by Gouin because, after talking with Myles, he had decided not to sign papers when he "did not know what Section 42 was."
Leroy Fontenot testified that he had lived at Timbercreek for eight years, that on March 3, 1998, he had deposited a rent check with the municipal court clerk due to problems that had "started when [his] mail box was messed up," and that he had attempted to persuade other tenants in his building to do the same. Timbercreek subsequently initiated an eviction action against Fontenot, and the action was dismissed with prejudice by Timbercreek on May 7, 1998. Fontenot stated that he had not received any notices threatening eviction prior to his attempt to organize the tenants in his building. On cross examination, Timbercreek elicited from Fontenot that he had not sent out any notices or petitions that would have made Timbercreek aware of his attempt to organize the tenants.
On August 20, 1998, the magistrate issued a decision and entry. The magistrate found that Myles had not paid his July 1998 rent on time, that he had not given Timbercreek a reasonable period of time to make the requested repairs prior to escrowing his July rent, and that he had presented no credible evidence that Timbercreek had retaliated against him for his efforts in forming the tenants' association or for complaining about the conditions of his apartment. Based on these findings, the magistrate ruled in favor of Timbercreek on the rent escrow action, ordering the release of all escrowed funds to Timbercreek, and on the eviction action, granted Timbercreek a writ of restitution of the premises. The trial court adopted the magistrate's decision.
Myles requested a stay of execution, and the trial court granted the stay and set the matter for hearing on August 28, 1998. Following the hearing, the trial court found that Timbercreek had served the statutory notices on Myles and that Myles had breached "the Lease or verbal rental agreement," and it vacated the stay. Myles filed a motion for a new trial, which the trial court overruled. On August 31, 1998, Timbercreek issued a writ of restitution to the municipal court bailiff, commanding Myles's removal from the apartment. On September 17, 1998, the municipal court bailiff completed the eviction.
Myles filed a notice of appeal on August 28, 1998, asserting six assignments of error. Although Timbercreek does not argue that Myles waived his right to appeal, we note that Myles failed to file objections to the magistrate's report as required by Civ.R. 53(E)(3)(b), and he thus waived the right to appellate review of all but plain error. See R.G. Real Estate Holding, Inc. v.Wagner (Apr. 24, 1998), Montgomery App. No. 16737, unreported. Because the trial court may adopt the magistrate's decision in the absence of objections "unless it determines that there is an error of law or other defect on [its] face," Civ.R. 53(E)(4)(a), on appeal we review the trial court's adoption for failure "to correct an obvious error of law or other such defect in the decision." Divens v. Divens (Oct. 2, 1998), Clark App. No. 97 CA 0112, unreported.
 I. THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS APPELLEE'S EVICTION ACTION FOR FAILURE TO STATE A CLAIM.
Myles argues that the trial court should have granted his motion to dismiss the eviction action because Timbercreek failed to state a claim upon which the requested relief could be granted.
Myles first claims that he paid rent for the month of July by depositing it with the municipal court clerk on July 6, 1998 in accordance with the procedure set forth in R.C. 5321.07, which provides, in pertinent part:
 (A) If a landlord fails to fulfill any obligation imposed upon him by section 5321.04 of the Revised Code * * * or any obligation imposed upon him by the rental agreement, if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill any such obligations, or if a governmental agency has found that the premises are not in compliance with building, housing, health, or safety codes that apply to any condition of the premises that could materially affect the health and safety of an occupant, the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance. The notice shall be sent to the person or place where rent is normally paid.
 (B) If a landlord receives the notice described in division (A) of this section and after receipt of the notice fails to remedy the condition within a reasonable time considering the severity of the condition and the time necessary to remedy it, or within thirty days, whichever is sooner, and if the tenant is current in rent payments due under the rental agreement, the tenant may do one of the following:
 (1) Deposit all rent that is due and thereafter becomes due the landlord with the clerk of the municipal or county court having jurisdiction in the territory in which the residential premises are located; * * *
If the trial court finds that the tenant did not comply with the R.C. 5321.07(A) notice requirement or that the tenant was not current in his rent payments at the time of initiating rent deposits with the municipal court clerk, "the court shall order the release to the landlord of rent on deposit with the clerk, less costs." R.C. 5321.09(C).
In Myles's June 30, 1998 "Notice of Landlord's Breach of Obligation," he stated that he would deposit his July rent with the municipal court clerk if the following conditions were not corrected the next day: fifteen-year-old stained carpet with holes, ceiling damaged by a defective roofing job, shower with a gaping hole that exposed pipes, fifteen-year-old refrigerator with a defective motor, and an air conditioner that caused the circuit breaker to "throw." His notice further expressed that "[m]ost of these problems were made known to management of TCV since at least Fall 1997 and were verified by their own inspections." Timbercreek introduced several work orders showing that the maintenance requests made by Myles in the past had been completed. Two work orders dated June 28, 1998 indicated that the air conditioner breaker had been checked and seemed okay and that the shower had been fixed. In our judgment, the trial court reasonably found that Myles had not complied with the R.C. 5321.07(A) notice requirement and thus, that Timbercreek had lawfully served him with the three-day eviction notice based on non-payment of rent for the month of July. Giving Timbercreek only one day to correct the specified conditions in Myles's apartment was certainly not reasonable, and, considering that Timbercreek intended to transfer tenants into newly renovated units in the near future, it is questionable whether Timbercreek was required to make the requested repairs at all.
The trial court also found that Myles was not current in his obligation to pay rent, as required by R.C. 5321.07(B), when he deposited his rent check with the municipal court clerk on July 6. Myles claims that, under Civ.R. 6(A), he was timely in escrowing his July rent on July 6 because the court had been closed on Friday July 3 when he had attempted to file the escrow application. Civ.R. 6(A) provides that, when a public office is closed for the entire day that constitutes the last day upon which an act required by law may be performed, then the act may be performed on the next day that is not a Saturday, Sunday, or legal holiday. Civ.R. 6(A), however, does not validate Myles's escrow application because Myles failed to comply with the notice provision of R.C. 5321.07 before escrowing his July rent, and his escrow application would have been impermissible even if filed on the third of July. Put differently, Myles was not authorized by law to escrow the July rent because his R.C. 5321.07(A) notice was ineffectual in that it demanded repairs within an unreasonably short period of time. As such, his rent had to be paid to Timbercreek, and was late as of July 6. Thus, the trial court did not err in concluding that Timbercreek had a lawful basis for evicting Myles and in refusing to dismiss the eviction action.
Myles argues on appeal that Timbercreek did not provide him with thirty days notice prior to initiating eviction proceedings as required by R.C. 5321.17, Section 42 of the Internal Revenue Code, Section 92.353, Part 24, C.F.R., and Section 1692 et seq., Title 15, U.S. Code — the Fair Debt Collection Practices Act ("the FDCPA"). Myles did not raise the issue of compliance under any of these provisions in the trial court, and we "need not address errors which are assigned and briefed but which were not raised in the trial court." Merillat v. Fulton Cty. Bd. of Commrs. (1991),73 Ohio App.3d 459, 463. Furthermore, thirty days notice pursuant to R.C. 5321.17(B) was not required because the termination of Myles's month-to-month tenancy was "based on the breach of a condition of a rental agreement," i.e., payment of rent, rather than the breach of Myles's statutory obligations as a tenant. See R.C. 5321.17(D); Georgetown Park Apt. v. Woernley (1996),112 Ohio App.3d 428, 431. Because the record does not contain evidence of any details of the conversion of Timbercreek into federally subsidized housing, we cannot determine whether Timbercreek violated any federal housing statutes or regulations in pursuing eviction proceedings against Myles.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED WHEN IT FAILED TO REMOVE COUNSEL FOR APPELLEE AS INTERESTED PARTY.
Myles claims that the trial court should have granted his motion to remove Timbercreek's counsel, Laurence Lasky, from the consolidated eviction and rent escrow cases because he was a named defendant in a civil action that Myles had filed in the common pleas court on July 21, 1998.
In his August 11, 1998 motion to remove Lasky, Myles argued that Lasky had a "vested financial self-interest in the outcome of these proceedings" and asked the trial court to determine whether Lasky was in violation of any disciplinary rules or ethical considerations. The trial court overruled this motion at the start of trial. Based on the scant information in the record before us, we cannot say that the trial court erred in rejecting Myles's claim that Lasky had acted unprofessionally and that his status as a defendant in Myles's common pleas action required Lasky's removal from the eviction and rent escrow cases taking place in the municipal court.
The second assignment of error is overruled.
 III. THE TRIAL COURT ERRED AS JUDGMENT WAS MADE AGAINST LAW AND CIVIL RULE 6, AND BASED ON RETALIATION OF APPELLEE.
Myles argues that, because he had two valid defenses to the eviction action--that he had paid his July 1998 rent on time by depositing it with the municipal court clerk and that the eviction proceedings had been brought in retaliation for organizing the TCVTA and for complaining about conditions needing repairs--his eviction was unlawful.
R.C. 5321.02(A) provides:
 (A) Subject to section 5321.03 of the Revised Code, a landlord may not retaliate against a tenant by * * * bringing or threatening to bring an action for possession of the tenant's premises because:
 (1) The tenant has complained to an appropriate governmental agency of a violation of a building, housing, health, or safety code that is applicable to the premises, and the violation materially affects health and safety;
 (2) The tenant has complained to the landlord of any violation of section 5321.04 of the Revised Code;
 (3) The tenant joined with other tenants for the purpose of negotiating or dealing collectively with the landlord on any of the terms and conditions of a rental agreement.
A landlord's retaliatory action may be used by the tenant as a defense in an action by the landlord to recover possession of the premises. R.C. 5321.02(B)(1). The tenant bears the burden of proving, by a preponderance of the evidence, that the landlord pursued eviction proceedings against him for conduct described in R.C. 5321.02(A). Weishaar v. Strimbu (1991), 76 Ohio App.3d 276,286; Karas v. Floyd (1981), 2 Ohio App.3d 4, 6. If the tenant meets this burden of proof, the burden shifts to the landlord to show that he brought the eviction action in compliance with R.C.5321.03(A), which provides that, notwithstanding R.C. 5321.02, a landlord may bring an eviction action against a tenant who is in default in paying rent. See id. at 6; Cuyahoga Metro. HousingAuth. v. Watkins (1984), 23 Ohio App.3d 20, 25.
After hearing the testimony of Myles, Gouin, and other Timbercreek tenants, the trial court found that Myles had not presented credible evidence that Timbercreek had retaliated against him. Because the trial court is in the best position to judge the credibility of witnesses, we defer to its determination that Myles did not satisfy his burden of proving a retaliatory eviction. Although Craft testified that he had been served with a three-day notice to vacate the premises for non-payment of rent but no eviction action had been brought against him, Craft further explained that he, unlike Myles, had responded to the three-day notice by paying rent directly to Timbercreek. Fontenot claimed that Timbercreek had pursued an eviction action against him in retaliation for escrowing rent and attempting to convince other tenants in his building to do the same; however, Timbercreek elicited from Fontenot that he had not publicized his efforts in a way that would have made Timbercreek aware of his conduct, thereby weakening Fontenot's testimony that Timbercreek's eviction action against him was retaliatory. Furthermore, in light of Timbercreek's conversion into federally subsidized housing, we find unconvincing Myles's claims that Timbercreek's letters directing tenants to complete new lease applications and other paperwork was evidence of retaliation. Thus, the trial court did not abuse its discretion in concluding that Myles had not satisfied his burden of proving that Timbercreek had initiated eviction proceedings in retaliation for his efforts in forming the TCVTA or for complaining about the conditions of his apartment.
Even assuming for the sake of argument that Myles had met his burden of proving a violation of R.C. 5321.02(A), Timbercreek was not prevented from bringing an eviction action against him for non-payment of rent. See R.C. 5321.03(A). As we discussed pursuant to Myles's first assignment of error, the trial court correctly determined that Myles was not entitled to exercise the statutory option of rent depositing because he had failed to comply with the notice requirement of R.C. 5321.07(A) and because he was, therefore, not then current in his rent obligation. Thus, the trial court did not err in concluding that Timbercreek had a lawful basis for pursuing the eviction action against Myles.
The third assignment of error is overruled.
 IV. THE TRIAL COURT VIOLATED DUE PROCESS WHEN IT FAILED TO PROPERLY CONSIDER AND/OR COMPEL APPELLANT'S SUBPOENA DEUCES TECUM, OR CONTINUE TRIAL IN THE ALTERNATIVE PENDING OUTCOME OF SAME.
Myles argues that the trial court should have either compelled Timbercreek to produce the documents requested in his August 3, 1998 subpoena to Gouin or continued the trial.
The August 3, 1998 subpoena commanded Gouin to bring the following documents with her to trial:
 Copies of all Rent Receipts for all Tenants in the last 6 months including dates accepted. Copies of all 3-Day Notices issued to all Tenants in the last 6 months. Copies of all Eviction (Forcible Entry) Notices delivered to all Tenants in the last 6 months. Copies of any letters asking any Tenant to leave in the last 6 months for any reason. Any and all official correspondence in same.
Myles later clarified the language of the subpoena by stating that "any and all official correspondence in same" included but was not limited to all leases that he had signed, all work orders and other written records prepared in response to his telephone calls to Gouin during the past year, and "[a]ny and all other nonprivileged correspondence made in reference to or otherwise concerning your office and Albert Myles." That same day, Timbercreek filed objections to the subpoena because "the documents requested through [the] subpoena are objectionable, not available, confidential information, and constitute an invasion of privacy." During argument on Myles's motion to compel, Timbercreek argued that producing the records on other tenants would invade the tenants' privacy. The trial court overruled Myles's motion to compel, stating:
 [T]he issue[s] before the court on this matter specifically are whether or not there is sufficient cause that you being evicted from your particular unit or that there is sufficient defense that you not be. This isn't a fishing expedition on behalf of all the tenants at Timbercreek Village. I would also note that these motions to compel were filed August the 12th. Only two days before the previously scheduled date for trial. And as is well read into the law eviction matters are summary in nature because of the issue of the various property rights of the landlord as well as the tenant. As far as your particular file, Mr. Myles, it's here in its entirety as Mr. Lasky's representation. As each section of it is tendered as possible exhibit into evidence you certainly have the right to review it in its entirety. But I'm not concerned and this trial isn't about other tenants and their lives at Timbercreek Village so that motion will be denied.
A person commanded by subpoena to produce documents at trial may file written objections to the subpoena within fourteen days after service of the subpoena. Civ.R. 45(C)(2)(b). According to Civ.R. 45(C)(3), the trial court from which a subpoena was issued "shall quash or modify the subpoena, or order appearance or production only under specified conditions" if, among other reasons, the subpoena does not allow a reasonable time for compliance or requires the disclosure of privileged or otherwise protected material.
In our judgment, the trial court did not abuse its discretion in overruling Myles's motion because it did not allow a reasonable time for compliance. Furthermore, we fail to see how Myles was prejudiced by the trial court's ruling given that he was able to elicit testimony from officers of the TCVTA and Fontenot, a former Timbercreek tenant who claimed to have been a victim of retaliatory eviction, to show that Timbercreek had initiated eviction proceedings in retaliation against him. Without any indication as to how the documents kept by Timbercreek on other tenants would have added to this testimony, we can only conclude that the trial court acted within its discretion in overruling Myles's motion. The fourth assignment of error is overruled.
 V. THE TRIAL COURT VIOLATED DUE PROCESS WHEN IT CONSOLIDATED APPELLANT'S RENT ESCROW CASE WITH APPELLEE'S EVICTION CASE.
Myles insists that the trial court violated his right to a fair trial by consolidating the rent escrow case and the eviction case.
In his August 11 memorandum opposing Timbercreek's motion to consolidate, Myles argued that Timbercreek "is now attempting to muddle clearly distinct issues for their own ends" and without further explanation, that the request would unfairly prejudice him. The trial court stated that it would consolidate the cases because Myles's rent escrow application was a possible defense to the eviction action and because both actions arose out of the same tenancy.
Civ.R. 42(A) provides:
 When actions involving a common question of law or fact are pending before a court, that court after a hearing may order a joint hearing or trial of any or all the matters in issue in the actions; it may order some or all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.
It is within the trial court's sound discretion to consolidate actions. Jamestown Village Condo. Owners Assn. v. Market MediaResearch, Inc. (1994), 96 Ohio App.3d 678, 687-688. In this case, the trial court accurately found that the rent escrow and the eviction actions involved common questions of law and fact. Thus, the trial court did not abuse its discretion in consolidating the actions.
The fifth assignment of error is overruled.
 IV. THE TRIAL COURT ERRED AS JUDGMENT WAS MADE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Myles asserts no more than "[f]or the foregoing assignments of error, law, and all evidence submitted, the judgment must be reversed as it was made against the manifest weight." Because Myles does not point to evidence contained in the record to support his claim that the judgment was against the manifest weight of the evidence, and because our review of the record supports the opposite conclusion, his assignment of error is without merit.
Myles's sixth assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to: Laurence A. Lasky, Albert Myles, Magistrate Dennis J. Greaney.