## POOLE v. MELTON
Case No. CO83-1527
County Court, Orange County
May 27, 1983

Arthur Leonardt, for plaintiff.

Jay Rose, GOALS, for defendant.

JAMES C. HAUSER, County Judge.

This cause came before this Court as a non-jury trial on May 11, 1983. The Plaintiff had filed a suit to regain possession of a house. The Defendant (Tenant) claims the eviction is retaliatorily motivated and for that reason, the eviction should be denied. The Defendant also has a counter-claim for damages because of housing code violations.

## FACTS

The Defendant, a 69 year old woman has been renting a two bedroom house, on an oral month to month lease, from the Plaintiff since 1978. Originally, just she and her husband lived in the house, but after a few months, her daughter and four children moved in. At the present time, there are seven people who live in the premises (the Defendant, her daughter and five children).

The house was inspected on July 16, 1982 by Orange County housing inspectors (Defendant's Exhibit 6). It was alleged that the toilet leaked because it was not properly mounted. The toilet also continually backed up, sometimes spewing raw sewage into the bathroom. There was testimony that the landlord sent a plumber to repair the fixture, but there was no evidence that it was properly repaired. In fact, the evidence was undisputed that as of May 11, 1983, the toilet was still leaking.

Despite the plumbing problem, the tenant continued to pay rent of $175.00 per month from July to December, 1982. She attempted to pay rent in January, 1983, but the landlord refused to accept it. On January 31, 1983, she sent a letter to the landlord stating she would withhold rent unless the landlord made repairs to the toilet. Since January, no repairs have been made, nor has any rent been paid the landlord.

In mid-January, the tenant filed suit in Circuit Court in an attempt to force the landlord to make the necessary repairs. The Complaint was served on both Charlie Poole and the owner of the property, Mary Poole (who is the Plaintiff's mother and an invalid). The first hearing on this Complaint was set for March 3, 1983; on that very same day, (March 3, 1983), the landlord sent a valid notice terminating the oral month to month lease.

## I. Retaliatory Eviction

After hearing all of the testimony, much of it conflicting, the Court makes the following findings of fact:

1. The Plaintiff is a very sincere and deeply religious man who owns eight or nine similar houses.

2. The Plaintiff's desire to evict the Defendant is not based on any personal animosity to the Defendant.

3. The primary reason the Plaintiff is evicting the Defendant is that she has:

    a. Complained to housing code officials about the toilet backing up.

    b. Complained to Legal Services about the same problem.

c. Filed a lawsuit against the Plaintiff and served the Complaint on his invalid mother. In fact, the Plaintiff admitted that the service of this Complaint was the "last straw".

4. The Plaintiff claims that the reason he is evicting the Defendant is that she has too many people in the two bedroom house. He claims that because of the large number of people in the house, the septic tank is unable to handle the flow of sewage. Although this might in fact be the case, there was no evidence before the Court that the septic tank was overflowing because of overuse. Had there been such evidence, the Court would have ruled that the Plaintiff had a valid reason for terminating the tenancy.

5. The repairs that needed to be made can be made without the Defendant vacating the premises.

6. The landlord has agreed to make the repairs, but only after the tenant has vacated the premises.

## CONCLUSIONS OF LAW

This case is remarkably similar to *Silberg v. Lipscomb*, 285 A.2d 86 (Dis. Court, N.J., 1971). In that case, like the case at bar, the tenant failed to establish any malice or hostility by the landlord to the tenant. In ruling the eviction was retaliatory, the Court emphasized that the repairs could have been made without the tenant vacating the apartment. That being the case, public policy would best be served by encouraging the tenant to make housing code complaints without fear of reprisal. The Court indicated that if the landlord had an independent reason for evicting the tenant, the eviction would have been permitted. In the case at bar, if the landlord had proven that the large number of occupants were causing the septic tank to overflow, he would have been entitled to possession. However the landlord failed on his burden of proof. See also *Karas v. Floyd*, 440 NE2d 563 (Ct. App. Ohio, 1981).

## II. Damages

A. Percentage reduction of rent.

The tenant claims, and the landlord denied, that she first made complaints about the septic tank and toilet in December, 1981. There is no question as of July 1982 the landlord was made aware that his leaking toilet violated the housing codes. Based on the demeanor of the witness, the Court believes the landlord first had actual knowledge of the housing code violations in July 1982. The Defendant seeks to have her rent reduced because of the inconvenience she suffered from not being able to use her bathroom for one and a half years. There was no

evidence before the Court as to how much the rent should be reduced. The Court believes that a 25% reduction of rent is fair and equitable.

## B. Waiver

Even though the Court is reducing the rent by 25%, there is a question of whether the time period should run from when she first began withholding rent (January 31, 1983) or from when this Court found the landlord had knowledge of the housing code violation, July, 1982. The Court notes that the tenant paid rent through December, 1982. Normally, she would be precluded from counterclaiming for a reduction of rent for the time period between July, 1982 and January, 1983. Florida Statute 83.56(5).[1] However, the landlord failed to raise Florida Statute 83.56(5) as an affirmative defense and hence, it must be deemed waived. *Leffler v. Smith*, 388 So.2d 261 (Fla. 5th DCA 1980); *Goldenberg v. Dome Condominium Association,* 376 So.2d 37 (Fla. 3d DCA 1979); *Fink v. Powsner*, 108 So.2d 324 (Fla. 3d DCA 1958); Florida Rules of Civil Procedure 1.110(d).

## C. Amount of Damages

Based on a 25% reduction, the tenant is entitled to a reduction of $43.75 per month from July 1, 1982 until the problem is remedied. The tenant is entitled to a credit of $262.50 for the months of July through December 1982. The landlord did not sue for rent owed from January, 1983 through May, 1983, but if he does, it will be calculated at $131.25 per month.[2]

It is therefore

ORDERED AND ADJUDGED that the Plaintiff not take possession of the premises. It is

FURTHER ORDERED AND ADJUDGED that the Defendant obtain a judgment against the Plaintiff in the amount of $262.50 for which let execution issue.

The Court retains jurisdiction to determine the issue of Defendant's right to attorney fees based on Florida Statute 501.2105.

---

[1]The Court does not answer whether a "set off" for future rent constitutes a "civil action for noncompliance" for purposes of Florida Statute 83.56(5).

[2]The landlord did not seek back rent and that is why there is no set off. That is also why Florida Statute 83.60(1) does not apply.