## SMITH v. ROOY, et. al.

Case No. CO85-1491

County Court, Orange County

May 31, 1985

### APPEARANCES OF COUNSEL

**William F. Poole** for plaintiff.

**Jay Rose** and **Melanie Malherbe**, Greater Orlando Area Legal Services, for defendant.

### OPINION OF THE COURT

JANIS MARY HALKER, County Judge.

This cause came before the Court for trial on May 22, 1985 on the Plaintiff's Complaint for possession of real property located in Orange County and the Defendant's Answer and Affirmative Defense. Defendant, Nancy Van Rooy, occupies the property pursuant to an oral month-to-month rental agreement providing for payment of $325.00 rent on the first day of each month. Plaintiff and his wife purchased the property in January, 1984 at which time Defendant was a tenant of the prior owner. On January 26, 1984 Defendant notified Plaintiff in

writing that the property required various repairs and an agreement was made between the parties that Plaintiff would not increase the rent and would make the repairs as he could. Between February, 1984 and March, 1985 Plaintiff fixed the power cord on the bedroom air conditioner, cleaned and adjusted two air conditioners, repaired the bedroom windows, and replaced the refrigerator. As Plaintiff candidly agrees, however, numerous other repairs are needed and Defendant has orally requested that the repairs be made throughout the period in which Plaintiff has owned the property. According to Plaintiff's Exhibit 2, which is the report of the Orange County Minimum Housing Board's inspection of the property on March 8, 1985, 13 items need repair or replacement, including a rotting bathroom floor, leaking ceilings, heating, wiring and a portion of the roof. On February 27, 1985, Defendant notified Plaintiff in writing, in conjunction with sending her March rent check, that the roof was still leaking. Defendant has never withheld rent pursuant to Fla. Stat. 83.60(1) nor has she ever given a 7 day notice pursuant to Fla. Stat. 83.56(1) of intent to terminate to rental agreement by reason of the Plaintiff's failure to make repairs.

On March 2, 1985, Defendant reported to Plaintiff a plumbing leak. The leak was from a cold water faucet that would not turn off. Although the leak did not present a hazard or cause other damage, Defendant was anxious to have it fixed because it would increase her water bill. After some prodding by Defendant and an argument with Plaintiff's wife, the leak was fixed on March 12, 1985. On March 8, 1985, Defendant sent a certified letter to Plaintiff with a detailed list of needed repairs but it was never received because Plaintiff did not have the time to go to the Post Office to claim it.

On March 14, 1985, Plaintiff served Defendant with a notice terminating the tenancy as of March 31, 1985, and the Defendant having failed to vacate, the Complaint for eviction was filed. Defendant answered and asserted as an affirmative defense that Plaintiff is seeking to evict her in retaliation for her requests that Plaintiff make repairs, as well as her request for an inspection by the Minimum Housing Board, in violation of Fla. Stat. 83.64 (1983).

Plaintiff agrees that Defendant pays her rent on time and has been in all other respects a good tenant. He gave Defendant the notice to vacate because he decided that the repairs must be made which he fears may create dangerous conditions on the property and would be difficult to perform with Defendant and her two children living in the house. The difficulty is compounded by the fact that Plaintiff cannot afford to have the work done professionally, and must do the work

54

himself on evenings and weekends. Mr. Troutman, an inspector with Orange County Minimum Housing with extensive experience in housing inspection and repair testified that the repairs can be made without the necessity of removing the tenant, and that it should take an individual about 70 hours to complete the work. Plaintiff agrees with this estimate of time.

This case presents an unusual scenario for a retaliatory eviction case in that the Court believes that although Plaintiff's attempts to make needed repairs over the past year were minimal, he is now sincere in his desire to bring the property into compliance with the Housing Code. Plaintiff is not attempting to avoid his legal duty to make repairs by evicting the Defendant. Further, the Court finds that Plaintiff did not know at the time he served Defendant with Notice to Vacate that Defendant had requested an inspection by the Minimum Housing Board. However, the Court also believes that but for Defendant's requests over the past year that the repairs be made, which culminated in her insistence in March that the plumbing leak be fixed, Plaintiff would not have decided to terminate the rental agreement in order to make repairs. Additionally, although there may be some inconvenience to both Plaintiff and Defendant, the Court is satisfied from the preponderance of the evidence that it is not necessary for the Defendant to vacate while the repairs are being made. There is no evidence that the repairs will be more costly if the Defendant does not vacate, or that the time available to Plaintiff for performance of the work cannot be utilized if the Defendant retains possession.

Plaintiff contends that as the owner of the property rented on a month-to-month basis, he has the absolute right under Fla. Stat. 83.57(3) to terminate the tenancy for any reason by giving the required notice at least 15 days prior to the end of the monthly term. Additionally, Plaintiff contends that pursuant to Fla. Stat. 83.51(2)(b), the mere failure of a landlord to make repairs is not a defense to an action for eviction. Defendant contends that Plaintiff's conduct is prohibited by Fla. Stat. 83.64 in that Plaintiff decided to make the repairs because of Defendant's complaints and that to permit an eviction for the reasons advanced by Plaintiff would produce a "chilling effect" on the exercise of a tenant's right to complain to the landlord and housing authorities about housing code violations.

Fla. Stat. 83.64(1983), entitled "Retaliatory Conduct", provides in part:

(1) It is unlawful for a landlord to . . . bring an action for possession . . . primarily because the landlord is retaliating against

**55**

the tenant. In order for the tenant to raise the defense of retaliatory conduct, the tenant must have acted in good faith. Examples of conduct for which the landlord may not retaliate include, *but are not limited to*, situations where:

(a) The tenant has complained to a governmental agency charged with responsibility for enforcement of a building, housing or health code of a suspected violation applicable to the premises;

(b) The tenant has organized, encouraged, or participated in a tenants' organization; or

(c) The tenant has complained to the landlord pursuant to s. 83.56(1).

(2) Evidence of retaliatory conduct may be raised by the tenant as a defense in any action brought against him for possession.

(3) In any event, this section does not apply if the landlord proves that the eviction is for good cause. Examples of good cause include, but are not limited to, good faith actions for nonpayment of rent, violation of the rental agreement or of reasonable rules, or violation of the terms of this chapter. (Emphasis added).

. . . . . . . . . . .

In determining whether or not the landlord is retaliating against the tenant the Court's inquiry is not limited to simply making a finding that the landlord's intent is or is not colored by vindictiveness or malice. *Poole v. Melton*, 5 Fla. Supp. 2d 103 (Cty. Ct., Orange County, 1983); *Silberg v. Lipscomb*, 285 A.2d 86 (Dist. Ct. N.J. 1971). The evidence in this case clearly establishes that there is no ill-feeling between the parties. In fact, Plaintiff has at all times been willing to give Defendant additional time to vacate. The meaning of the word "retaliate" may often encompass actions predicated upon animus, but its meaning is sufficiently broad that it is not limited to such actions. "To retaliate" has been defined as "to return like for like, especially to return evil for evil . . . to pay back (an injury) in kind . . ." The American Heritage Dictionary of the English Language, 1979. The Court therefore holds that it is sufficient to establish retaliatory intent if the primary reason for the eviction action is some conduct of the tenant that is protected by Fla. Stat. 83.64, regardless of whether or not the relationship between landlord and tenant is attended by hostility. This conclusion will best effectuate the purposes of Fla. Stat. 83.64 hereinafter discussed.

Prior to 1973, Plaintiff's assertion that his property rights are absolute may well have been justified. But in 1973 the Landlord-Tenant

law of this state was substantially changed by the enactment of the "Florida Residential Landlord and Tenant Act." Chapter 73-330, Laws of Florida, 1973. The act sets forth certain rights and duties of both landlord and tenant, and prescribes remedies and the procedure for their enforcement. In 1983, a further limitation on the owner's rights respecting the use of residential rental property was imposed by the enactment of Fla. Stat. 83.64. The public policies advanced by this statute are the provision of housing that meets certain minimum standards, and, fair dealing between landlord and tenant. This law and similar laws in other states encourage the reporting of housing code violations or other violations of law because they prohibit the landlord from avoiding his duty to make repairs or comply with other legal obligations by simply evicting the tenant. *Karas v. Floyd*, 440 N.E. 2d 563 (Ohio App. 1981).

The Court having determined that Plaintiff decided to evict Defendant because she requested repairs of housing code violations and because the repairs are in fact necessary, two legal issues are presented: (1) whether Fla. Stat. 83.64(1) applies where the tenant's complaints to the landlord are oral and (2) whether convenience of the landlord in making repairs is "good cause" to evict under Fla. Stat. 83.64(3).

Subsections (a), (b), and (c) of Fla. Stat. 83.64(1) set forth examples of the conduct of a tenant for which the landlord may not retaliate. Subsection (c) specifies that complaints to the landlord pursuant to Fla. Stat. 83.56(1) are protected. That statute provides for *written notice* to the landlord of his non-compliance with Fla. Stat. 83.51 (building, housing and health codes) and permits, among other things, the tenant to terminate the rental agreement or withhold rent if the landlord fails to comply within 7 days of the notice. However, Fla. Stat. 83.64(1) clearly provides that the protected conduct is *not limited to* the examples cited in subsection (a), (b), and (c). The Court holds that an oral complaint to the landlord concerning housing code violations or other violations of law is conduct for which the landlord may not retaliate. In some cases, the oral complaint may be more difficult to prove, but no legitimate purpose would be served by requiring that the complaint be in writing.[1]

The Court further holds that the landlord's preference for removal of the tenant prior to making the repairs for his own convenience is not "good cause" under Fla. Stat. 83.64(3) for an eviction that has

---

[1] If the legislature had intended that the complaint be in writing it could have specifically required written notice as it did in Fla. Stat. 83.56. See *K.D. Lewis Enterprises Corp. v. Smith*, 445 So.2d 1032 (Fla. 5th DCA 1964).

otherwise been determined to be retaliatory. This does not mean, of course, that if the evidence had established that the repairs would be rendered significantly more costly or that an unreasonable burden would be imposed on the Plaintiff by having to make the repairs with the Defendant in possession, that the Court would not have found good cause. However, where it is not necessary for the tenant to vacate in order that the repairs be made, should the Court hold the landlord's preference or subjective notion of convenience establishes good cause, Fla. Stat. 83.64 would be rendered meaningless. Should the Defendant fail to cooperate with the Plaintiff's efforts to make repairs or prevent the orderly progress of the work, then the Plaintiff may be able to establish "good cause." Defendant's counsel has assured the Court, however, that Defendant will make every effort to facilitate the work.

As to the Plaintiff's contention that the Affirmative Defense is barred by Fla. Stat. 83.51(2)(b) it is sufficient to note that the defense is not based upon Plaintiff's failure to make repairs but upon Plaintiff's conduct in response to Defendant's requests for repairs.

For all of the foregoing reasons, the Court holds that Defendant has proven her Affirmative Defense of retaliatory eviction and the Plaintiff has failed to establish good cause for the eviction. It is, therefore

ORDERED AND ADJUDGED that Plaintiff, Scott H. Smith, take nothing from the Defendant, Nancy Van Rooy, and Defendant shall go hence without day.